Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:      (916) 443-6911
Facsimile:      (916) 447-8336
E-Mail:      mark@markmerin.com
            paul@markmerin.com

Attorneys for Plaintiffs
ESTATE OF KIM JACKSON,
MATTHEW BORING, ALYSSA CABRERA,
GLENN JACKSON, and ANNA JACKSON

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| ESTATE OF KIM JACKSON, MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA JACKSON, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS** <br><br> **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

This action arises from the officer-involved shooting of KIM JACKSON by police officers ALEX

BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, employees of the CITY MODESTO,

MODESTO POLICE DEPARTMENT, and Police Chief GALEN CARROLL.

## JURISDICTION & VENUE

1.      This Court has original jurisdiction of the federal claims asserted herein pursuant to 28

U.S.C. § 1331 (in that they arise under the United States Constitution) and § 1343(a)(3) (in that the action

is brought to address deprivations, under color of state authority, of rights, privileges, and immunities

1

secured by the United States Constitution). This Court has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

2.   Venue is proper in the United State District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because many of the acts and/or omissions described herein occurred in the Eastern District of California.

3.   Intradistrict venue is proper in the Fresno Division of the Eastern District of California pursuant to E.D. Cal. L.R. 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Stanislaus, California.

## EXHAUSTION

4.   On January 21, 2021, ESTATE OF KIM JACKSON, MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA JACKSON submitted a government claim to the CITY OF MODESTO and MODESTO POLICE DEPARTMENT concerning the claims asserted in this action. On March 5, 2021, the CITY OF MODESTO responded that "no action was taken on the claim." The MODESTO POLICE DEPARTMENT failed to respond to the government claim. By March 8, 2021, the government claim was deemed to have been rejected. *See* Cal. Gov. Code § 912.4(c).

## PARTIES

5.   Plaintiff ESTATE OF KIM JACKSON appears by and through real-parties-in-interest Plaintiffs MATTHEW BORING and ALYSSA CABRERA, who bring this action pursuant to Cal. Code Civ. Proc. § 377.30. Plaintiffs MATTHEW BORING and ALYSSA CABRERA bring this action as successors-in-interest on behalf of Plaintiff ESTATE OF KIM JACKSON. Plaintiffs MATTHEW BORING and ALYSSA CABRERA's declarations regarding their status as successors-in-interest are attached hereto, pursuant to Cal. Code Civ. Proc. § 377.32.

6.   Plaintiff MATTHEW BORING is a resident of the State of California, County of Stanislaus. Plaintiff MATTHEW BORING brings this action: (a) in his representative capacity, as a successor-in-interest on behalf of Plaintiff ESTATE OF KIM JACKSON; and (b) in his individual capacity, on behalf of himself. Plaintiff MATTHEW BORING is the biological son of KIM JACKSON.

7.   Plaintiff ALYSSA CABRERA is a resident of the State of California, County of Stanislaus. Plaintiff ALYSSA CABRERA brings this action: (a) in her representative capacity, as a

successor-in-interest on behalf of Plaintiff ESTATE OF KIM JACKSON; and (b) in her individual capacity, on behalf of herself. Plaintiff ALYSSA CABRERA is the biological daughter of KIM JACKSON.

8.    Plaintiff GLENN JACKSON is a resident of the State of California, County of Stanislaus. Plaintiff GLENN JACKSON is the biological father of KIM JACKSON.

9.    Plaintiff ANNA JACKSON is a resident of the State of California, County of Stanislaus. Plaintiff ANNA JACKSON is the biological mother of KIM JACKSON.

10.    Defendant CITY OF MODESTO is a "public entity" within the definition of Cal. Gov. Code § 811.2. Defendant CITY OF MODESTO is located in the State of California, County of Stanislaus.

11.    Defendant MODESTO POLICE DEPARTMENT is a "public entity" within the definition of Cal. Gov. Code § 811.2. Defendant MODESTO POLICE DEPARTMENT is located in the State of California, County of Stanislaus.

12.    Defendant GALEN CARROLL was, and at all times material herein, a law enforcement officer and the Police Chief of Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT, acting within the scope of that employment. Defendant GALEN CARROLL is sued in his individual capacity.

13.    Defendant ALEX BETTIS was, at all times material herein, a law enforcement officer employed by Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT, acting within the scope of that employment. Defendant ALEX BETTIS is sued in his individual capacity.

14.    Defendant JOSEPH LAMANTIA is, at all times material herein was, a law enforcement officer employed by Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT, acting within the scope of that employment. Defendant JOSEPH LAMANTIA is sued in his individual capacity.

15.    Defendant MICHAEL CALLAHAN is, at all times material herein was, a law enforcement officer employed by Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT, acting within the scope of that employment. Defendant MICHAEL CALLAHAN is sued in his individual capacity.

3

## GENERAL ALLEGATIONS

16.     At all times relevant herein, all wrongful acts described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

### The Mental Health History of Kim Jackson

17.     KIM JACKSON was a 52-year-old woman known by Defendant MODESTO POLICE DEPARTMENT's police officers to be a disabled person who struggled with mental health and substance abuse issues over the course of several years, up to and including the date of her death on October 8, 2016.

18.     KIM JACKSON's mental health and substance abuse issues substantially limited her ability, for example, to care for herself, concentrate, think, and communicate.

19.     KIM JACKSON had an extensive record of law enforcement contacts with Defendant MODESTO POLICE DEPARTMENT's police officers, including at least three mental health detentions by law enforcement under Cal. Wel. & Inst. Code § 5150, prior to her death.

### The Officer-Involved Shooting

20.     On October 8, 2016, around 1:48 a.m., Plaintiff GLENN JACKSON called 9-1-1 from his residence to report that KIM JACKSON, his daughter, was intoxicated and vandalizing the residence but that no weapons were involved.

21.     Around 2:04 a.m., Defendant MODESTO POLICE DEPARTMENT's police officers Defendant MICHAEL CALLAHAN and Sam Cullom arrived at the Jackson residence and met with Plaintiff GLENN JACKSON.

22.     KIM JACKSON was no longer present at the residence.

23.     Plaintiff GLENN JACKSON told Defendant MICHAEL CALLAHAN that KIM JACKSON had been drinking and had threatened suicide. Plaintiff GLENN JACKSON told Defendant MICHAEL CALLAHAN that he did not want KIM JACKSON to be arrested but only wanted her to leave the residence, which she had done.

24.     Around 2:39 a.m., Defendant MICHAEL CALLAHAN closed the call and left the Jackson residence.

25.     Around 3:04 a.m., Plaintiff GLENN JACKSON again called 9-1-1 and reported that KIM

4

JACKSON had returned to the residence and was armed with a kitchen knife.

26.     Around 3:09 a.m., Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN responded to the Jackson residence.

27.     Defendant ALEX BETTIS observed that KIM JACKSON was on the driveway outside of the Jackson residence and that she appeared to be "agitated" and "screaming" upon the officers' arrival to the scene.

28.     Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN discussed that they had been to the Jackson residence on prior occasions related to KIM JACKSON.

29.     Defendant MICHAEL CALLAHAN informed Defendants ALEX BETTIS and JOSEPH LAMANTIA that he intended to take KIM JACKSON into custody for a mental health hold under Cal. Wel. & Inst. Code § 5150.

30.     Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN did not discuss or develop any "game plan" concerning how they would approach or detain KIM JACKSON or reasonably accommodate KIM JACKSON's present disabilities.

31.     Defendant MICHAEL CALLAHAN armed himself with a taser.

32.     Defendant JOSEPH LAMANTIA armed himself with a pistol

33.     Defendant ALEX BETTIS armed himself with a shotgun.

34.     Defendant ALEX BETTIS's shotgun was loaded with a lethal "breaching" round, which is a special type of ammunition used to penetrate door locks but not meant to be fired at or into persons.

35.     Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN walked toward the Jackson residence, with their weapons unholstered and displayed.

36.     On information and belief, Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's show of force as they approached the Jackson residence exacerbated symptoms of KIM JACKSON's mental illness, increasing her fear and anxiety that Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN intended to harm her.

37.     KIM JACKSON approached the officers in the street in front of the residence.

38.     KIM JACKSON held multiple multi-colored kitchen knives in each of her hands.

39.     Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN

"triangulated" KIM JACKSON's position.

40.     On information and belief, Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's triangulation of KIM JACKSON's position exacerbated symptoms of KIM JACKSON's mental illness, including increasing her fear and anxiety that Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN were surrounding her.

41.     KIM JACKSON walked towards Defendant JOSEPH LAMANTIA.

42.     Defendant JOSEPH LAMANTIA shot a bullet from his pistol into KIM JACKSON's body, from a distance of approximately 11 or 12 feet.

43.     The bullet fired by Defendant JOSEPH LAMANTIA struck KIM JACKSON in the chest.

44.     Defendant MICHAEL CALLAHAN shot his taser in dart-mode into KIM JACKSON's body, from a distance of approximately 17 feet.

45.     The taser probe fired by Defendant MICHAEL CALLAHAN struck KIM JACKSON on the left wrist.

46.     Defendant JOSEPH LAMANTIA fired his pistol and Defendant MICHAEL CALLAHAN shot his taser at KIM JACKSON at the same time.

47.     KIM JACKSON dropped all of the knives she held in both of her hands, after KIM JACKSON was struck in the chest by the bullet fired by Defendant JOSEPH LAMANTIA and by the taser probe fired by Defendant MICHAEL CALLAHAN.

48.     KIM JACKSON turned and began to stagger away, in the direction opposite Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

49.     KIM JACKSON did not pose a threat to the officers or to anyone else, after KIM JACKSON turned and began to stagger away.

50.     Defendant ALEX BETTIS twice shot his shotgun into KIM JACKSON's back, from a distance of approximately 22 feet and while KIM JACKSON was facing and staggering away from Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

51.     One of the two shots fired by Defendant ALEX BETTIS was a breaching round which penetrated KIM JACKSON's left-twelfth rib, left kidney, left adrenal gland, the aorta, intestines, and stomach, before becoming lodged in her liver.

6

52.   Defendant JOSEPH LAMANTIA shot a second bullet from his pistol towards KIM JACKSON's back, from a distance of approximately 17 feet and while KIM JACKSON was facing and staggering away from Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

53.   The second bullet fired by Defendant JOSEPH LAMANTIA grazed KIM JACKSON's right forearm.

54.   Defendant ALEX BETTIS fired the second shot from his shotgun and Defendant JOSEPH LAMANTIA fired the second bullet from his pistol at KIM JACKSON's back at the same time.

55.   KIM JACKSON collapsed onto the ground.

56.   KIM JACKSON was later transported to the hospital, where she was pronounced dead.

57.   Defendant ALEX BETTIS informed Defendant MODESTO POLICE DEPARTMENT's personnel at the scene of the shooting that he had "fucked up" because he believed that he had previously loaded his shotgun with less-lethal beanbag rounds prior to shooting KIM JACKSON but that his shotgun was actually loaded with a lethal breaching round at the time that he shot KIM JACKSON.

58.   Defendant ALEX BETTIS stated that he was "out of position" when Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN confronted KIM JACKSON.

59.   Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN were the only surviving eye-witnesses to the officer-involved shooting of KIM JACKSON.

60.   Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN were each wearing body-worn cameras which were activated prior to the officer-involved shooting of KIM JACKSON. Defendant JOSEPH LAMANTIA's body-worn camera recording demonstrates KIM JACKSON's positioning during the officer-involved shooting.

**The Shooting Board Review**

61.   On October 10, 2016, Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN were interviewed concerning the officer-involved shooting of KIM JACKSON. Defendant ALEX BETTIS voluntarily provided a statement. Defendants JOSEPH LAMANTIA and MICHAEL CALLAHAN invoked their right to silence and refused voluntarily to provide statements. Defendants JOSEPH LAMANTIA and MICHAEL CALLAHAN provided

7

1   statements after being compelled to do so by Defendant MODESTO POLICE DEPARTMENT.

2       62.     On April 11, 2017, Defendant MODESTO POLICE DEPARTMENT convened a

3   "Shooting Board Review" for the purpose of reviewing the officer-involved shooting of KIM

4   JACKSON. The Shooting Review Board consisted of Defendant GALEN CARROLL, Assistant Police

5   Chief Rick Armendariz, and Captains David Van Diemen, Craig Gundlach, and Brian Findlen.

6       63.     The Shooting Review Board unanimously concluded that the actions of Defendants ALEX

7   BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN in connection with the officer-involved

8   shooting of KIM JACKSON were "justified and within departmental policy." (FD16-006.)

9                         **The Post-Shooting Press Releases**

10      64.     On October 10, 2016, Defendants CITY OF MODESTO, MODESTO POLICE

11  DEPARTMENT, and GALEN CARROLL issued a public "News Release." Therein, the officer-involved

12  shooting of KIM JACKSON was described as follows: "Officers arrived and as they were walking up to

13  the home, Jackson confronted them in the street, armed with multiple knives. As officers were giving

14  verbal commands for her to drop the knives, she advanced rapidly at them with the knives raised above

15  her head. Officers utilized a taser, bean bags and one officer used his duty weapon. She was rushed to a

16  local hospital where she succumbed to her injuries."

17      65.     On July 9, 2018, the Stanislaus County District Attorney's Office issued a "Press Release"

18  containing findings pursuant to the "county-wide shooting investigation policy" relating to the officer-

19  involved shooting of KIM JACKSON. Therein, the officer-involved shooting of KIM JACKSON was

20  described as follows: "Jackson immediately raised her hands over her head displaying the knives she held

21  in each hand while confronting Off. Lamantia and Sgt. Bettis. Off. Lamantia backed away from Jackson

22  as she approached and told her to 'back up, back up.' Almost immediately Jackson started running

23  towards Bettis and Lamantia. All three officers discharged the weapons they had." Further therein, the

24  Stanislaus County District Attorney's Office concluded: "[Jackson's] failure to comply with the request

25  to drop the knives and her subsequent actions would clearly raise any reasonable officer's fear of the

26  situation. Jackson forced the officers to shoot her. Under these circumstances, the shooting of Kim Marie

27  Jackson by Officer Joseph Lamantia, Officer Michael Callahan and Sergeant Alex Bettis is determined to

28  be justified and in self-defense."

**The Jackson Family's Access to the Officer-Involved Shooting Information**

66.     Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL did not make the body-worn camera footage of the officer-involved shooting of KIM JACKSON available to the public or to KIM JACKSON's family.

67.     KIM JACKSON's surviving family members—including Plaintiffs MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA JACKSON—did not know or have reason to know that the officer-involved shooting of KIM JACKSON by Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN was not justified or that improper tactics and ammunition were utilized.

68.     Plaintiffs MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA JACKSON relied on the publicly released information provided by Defendant MODESTO POLICE DEPARTMENT and the Stanislaus County District Attorney's Office to conclude that the officer-involved shooting of KIM JACKSON was justified and that there was no legal basis to pursue a legal action in connection with the death of KIM JACKSON.

69.     On information and belief, Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, and other agencies and personnel involved with the investigation of the officer-involved shooting of KIM JACKSON, including the Stanislaus County District Attorney's Office, actively and intentionally concealed from the public and KIM JACKSON's family critical details of the officer-involved shooting of KIM JACKSON which would have demonstrated its unreasonable nature.

70.     Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, and other agencies and personnel involved with the investigation of the officer-involved shooting of KIM JACKSON, including the Stanislaus County District Attorney's Office, never publicly revealed, for example: (1) that Defendant ALEX BETTIS shot KIM JACKSON in the back with a lethal "breaching" round; (2) that Defendant ALEX BETTIS admitted that he had "fucked up" when he shot KIM JACKSON in the back with a lethal "breaching" round; (3) that Defendant ALEX BETTIS admitted he was "out of position" prior to shooting KIM JACKSON in the back with a lethal "breaching" round; and (4) that Defendants

1   ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN did not discuss or develop any

2   "game plan" concerning how they would approach or detain KIM JACKSON.

3       71.    In or about November 2020, Plaintiffs MATTHEW BORING, ALYSSA CABRERA,

4   GLENN JACKSON, and ANNA JACKSON for the first time learned and discovered details of the

5   officer-involved shooting of KIM JACKSON, including the actions of Defendants ALEX BETTIS,

6   JOSEPH LAMANTIA, and MICHAEL CALLAHAN, and the policies or customs of Defendants CITY

7   OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL which gave rise to those

8   actions. Specifically, Plaintiffs MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and

9   ANNA JACKSON obtained access to Defendants MODESTO POLICE DEPARTMENT's Shooting

10  Board Review of the officer-involved shooting of KIM JACKSON.

11                          **The Citizen Complaint**

12      72.    Defendant MODESTO POLICE DEPARTMENT has established a procedure to

13  investigate complaints by members of the public against its personnel, pursuant to Cal. Pen. Code §

14  832.5(a)(1).

15      73.    Defendant MODESTO POLICE DEPARTMENT's Policy Manual, Policy 1020

16  ("Personnel Complaints") states: "The Department will accept and address all complaints of

17  misconduct…" (< https://www.modestogov.com/2503/Policy-Manual-and-Training-Materials >.)

18      74.    Defendant MODESTO POLICE DEPARTMENT's "Citizen Complaint Form" identifies

19  its "Citizen Complaint Policy" as follows: "**COMPLAINT DEFINED:** A complaint is defined as an

20  allegation of misconduct by an employee which, if found to be true, could result in disciplinary action.

21  [¶] **COMPLAINT DISPOSITIONS:** Based upon the findings of the Department investigation, a

22  complaint shall be classified in the following manner: **Sustained, Not Sustained, Exonerated,**

23  **Unfounded or Closed.**" (< https://www.modestogov.com/DocumentCenter/View/6325/Citizen-

24  Complaint-Form-PDF?bidId >)

25      75.    On January 25, 2021, Plaintiffs ESTATE OF KIM JACKSON, MATTHEW BORING,

26  ALYSSA CABRERA, GLENN JACKSON, and ANNA JACKSON submitted a citizen complaint to

27  Defendant MODESTO POLICE DEPARTMENT. Therein, several allegations of misconduct were made

28  against Defendants MODESTO POLICE DEPARTMENT, ALEX BETTIS, JOSEPH LAMANTIA, and

10

MICHAEL CALLAHAN in connection with the officer-involved shooting of KIM JACKSON, including: "Allegation No. 1: Officers Lamantia and Callahan and sergeant Bettis did not adequately prepare to confront Kim Jackson"; "Allegation No. 2: Officers Lamantia and Callahan and sergeant Bettis did not employ appropriate de-escalation techniques, when they confronted Kim Jackson"; "Allegation No. 3: Officer Lamantia shot Kim Jackson in the back, after she had dropped the kitchen knives she previously held in her hands"; "Allegation No. 4: Sergeant Bettis shot Kim Jackson in the back, after she had dropped the kitchen knives she previously held in her hands, with a 'breaching' round"; "Allegation No. 5: Sergeant Bettis was 'out of position' prior to shooting Kim Jackson"; "Allegation No. 6: Modesto Police Department did not publicly disclose that Kim Jackson was shot in the back by its officers"; "Allegation No. 7: Modesto Police Department did not publicly disclose that Kim Jackson was shot with a 'breaching' round by sergeant Bettis"; "Allegation No. 8: Modesto Police Department did not re-train any of its officers involved in the Kim Jackson officer-involved shooting"; "Allegation No. 9: Modesto Police Department did not discipline any of its officers involved in the Kim Jackson officer-involved shooting"; and "Allegation No. 10: Modesto Police Department concluded that the Kim Jackson officer-involved shooting was 'within policy,' when several policies were violated during the course of the encounter."

76.     On January 26, 2021, Defendant MODESTO POLICE DEPARTMENT's Lieutenant Aaron Tait responded to the citizen complaint, on behalf of Defendant MODESTO POLICE DEPARTMENT's Internal Affairs Unit. Therein, Lieutenant Aaron Tait stated: "Upon further review, it has been determined that this complaint has already been investigated under Internal Affairs case number FD16-006. This investigation was found to be 'Within Policy'."

77.     Defendant MODESTO POLICE DEPARTMENT's "Citizen Complaint Policy" does not permit it to resolve a citizen complaint with the classification of "Within Policy." Defendant MODESTO POLICE DEPARTMENT's classification of "Within Policy" is not one of the five possible classifications required by the "Citizen Complaint Policy." Defendant MODESTO POLICE DEPARTMENT did not resolve the citizen complaint consistent with its "Citizen Complaint Policy."

78.     Defendant MODESTO POLICE DEPARTMENT's Internal Affairs Case Number FD16-006, which concerned the "Shooting Review Board" of the officer-involved shooting of KIM JACKSON,

1   did not investigate the allegations of misconduct contained in the citizen complaint submitted. Case

2   Number FD16-006 concluded only that Defendants ALEX BETTIS, JOSEPH LAMANTIA, and

3   MICHAEL CALLAHAN's use of force against KIM JACKSON was "justified and within policy." The

4   citizen complaint's allegations of misconduct did not allege only that Defendants ALEX BETTIS,

5   JOSEPH LAMANTIA, and MICHAEL CALLAHAN's use of force against KIM JACKSON was

6   unjustified and outside of policy. Defendant MODESTO POLICE DEPARTMENT did not "accept and

7   address all complaints of misconduct" contained in the citizen complaint, as required by Modesto Police

8   Department Policy Manual, Policy 1020.2.

9   **POLICY AND CUSTOM ALLEGATIONS**

10   79.   Defendant GALEN CARROLL was a final policy-making authority for Defendants CITY

11   OF MODESTO and MODESTO POLICE DEPARTMENT, at all times material herein. *See* Cal. Gov.

12   Code § 38630(a); Modesto Municipal Code § 2-3.902 (available at: <

13   https://library.municode.com/ca/modesto/codes/code_of_ordinances >); Modesto Police Department

14   Policy Manual, Policy 106.3 ("Policy Manual") and Policy 200 ("Organizational Structure and

15   Responsibility") (available at: < https://www.modestogov.com/2503/Policy-Manual-and-Training-

16   Materials >). Defendant GALEN CARROLL was employed as Police Chief by Defendants CITY OF

17   MODESTO and MODESTO POLICE DEPARTMENT from January 2013 to December 2020.

18   80.   Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's use

19   of unreasonable and excessive force against KIM JACKSON resulted from the existence of a policy or

20   custom maintained by Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and

21   GALEN CARROLL; namely, a policy or custom of action or inaction Defendants CITY OF MODESTO,

22   MODESTO POLICE DEPARTMENT, and GALEN CARROLL knowingly participated in, acquiesced

23   to, and/or were deliberately indifferent to the creation and maintenance of a culture permitting or

24   encouraging police officers' use of unreasonable and excessive force.

25   81.   Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN

26   CARROLL's insufficient training, supervision, or control of their personnel, including Defendants

27   ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, was a moving force behind and

28   contributed to the use of unreasonable and excessive force against KIM JACKSON, resulting in her

12

1    injuries. Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN

2    CARROLL knew or should have known that personnel under their command, including Defendants

3    ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, were inadequately trained,

4    supervised, or disciplined resulting from either the lack of proper training, pursuant to policy or custom,

5    or the result of the lack of policy.

6                                    **Mental Health Contacts**

7           82.    Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN

8    CARROLL knew or should have known that a substantial number of contacts between their police

9    officers and persons wherein force and lethal force has been applied involved mentally ill and/or

10   substance-impaired persons who do not respond in the way persons who are not mentally ill do to orders,

11   commands, brusk and direct language, and escalating force. Defendants CITY OF MODESTO,

12   MODESTO POLICE DEPARTMENT, and GALEN CARROLL should have promulgated specific

13   policies and trained police officers under their command in the application of such policies, including

14   those prescribed by the California Commission on Peace Officer Standards and Training ("POST"),

15   Learning Domain 37 ("People with Disabilities").

16          83.    Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN

17   CARROLL maintained Modesto Police Department Policy Manual, Policy 300 ("Use of Force")

18   (Adoption Date: 2016/08/01), at the time of the officer-involved shooting of KIM JACKSON on October

19   8, 2016. Policy 300 did not provide any guidance or training concerning how police officers should

20   handle mentally unstable individuals in connection with uses of force.

21          84.    Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN

22   CARROLL never took specific, appropriate, or adequate steps to implement policies with adequate

23   training, disciplinary action, or supervision of police officers, such as field training in handing detention

24   and arrest of persons that have disabilities or that are under the influence of substances that impair the

25   ability to understand and respond to law enforcement officer commands. Specifically, Defendants CITY

26   OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL failed adequately to

27   train police officers:

28                 a.     how to approach persons suffering from mental disability or substance

1    impairment;

2            b.      how to speak to persons suffering from a from mental disability or substance

3    impairment;

4            c.      how to interact with persons suffering from mental disability or substance

5    impairment (including using appropriate body language and tone of voice);

6            d.      how to respect the personal space of persons suffering from mental disability or

7    substance impairment;

8            e.      how reasonably to accommodate the disability of persons suffering from mental

9    disability or substance impairment; and

10           f.      how to deescalate, without use of force, incidents involving persons suffering from

11   mental disability or substance impairment.

12       85.    Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN

13   CARROLL's failure adequately to train, supervise, or discipline police officers, including Defendants

14   ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, caused the use of unreasonable

15   and excessive force against persons with mental disabilities or substance impairment, including KIM

16   JACKSON.

17       71.    Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN

18   CARROLL were or should have been aware of the need for more or additional policies and training

19   concerning police officers' encounters with force against persons with mental disabilities or substance

20   impairment, given the frequency with which their police officers encounter and employed force against

21   such persons.

22                                   **Use of Force**

23       86.    Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN

24   CARROLL's policy or custom of unreasonable and excessive force is demonstrated by Defendants

25   ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's use of force against KIM

26   JACKSON, including:

27           a.      The multiple harms to which KIM JACKSON was subjected, including multiple

28   uses of force and the violation of multiple civil and constitutional rights.

14

1    b.    The violation of multiple POST requirements governing Defendants ALEX

2  BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's conduct, including the requirements of

3  POST Learning Domain 37 ("People with Disabilities").

4    c.    The cavalier nature with which Defendants ALEX BETTIS, JOSEPH

5  LAMANTIA, and MICHAEL CALLAHAN engaged in misconduct in an open, public place, including

6  while being recorded on body-worn cameras, without concern that it could be observed by others.

7    d.    The impunity with which Defendants ALEX BETTIS, JOSEPH LAMANTIA, and

8  MICHAEL CALLAHAN acted, where multiple officers were present and involved in the misconduct.

9    87.    Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN

10  CARROLL's policy or custom is further demonstrated by various incidents involving police officers'

11  uses of unreasonable and excessive force, including:

12    a.    On February 8, 2009, Defendant MODESTO POLICE DEPARTMENT's police

13  officers James Murphy, Ronald Ziya, Mark Fontes, Kalani Souza, Ronald Cloward, and Jon Buehler

14  responded to a noise complaint at a residence. The officers attacked and arrested several of the

15  occupants, including Miguel Rodriguez, Charisse Fernandez, and Adrian Alizaga, utilizing excessive

16  force, including a taser and police canine. A civil rights lawsuit was filed. (*Rodriguez v. City of Modesto*,

17  E.D. Cal. Case No. 1:10-cv-01370-LJO-MJS.) Defendant CITY OF MODESTO settled the case for

18  $165,000, before trial.

19    b.    On June 4, 2009, Defendant MODESTO POLICE DEPARTMENT's police

20  officer Horacio Ruiz forcefully twisted the wrist of a handcuffed minor, Randi Fisher, breaking her wrist.

21  A civil rights lawsuit was filed. (*Fisher v. City of Modesto*, E.D. Cal. Case No. 1:10-cv-01029-OWW-

22  JLT.) Defendant CITY OF MODESTO settled the case for $495,000, before trial.

23    c.    On September 25, 2009, Defendant MODESTO POLICE DEPARTMENT's

24  police officer Shane Castro was transporting Lilia Melgoza, a female arrestee, to jail when he pulled-over

25  his patrol vehicle, threw her to the ground while she was handcuffed, jumped on top of her, and slammed

26  her face into ground, injuring her. A civil rights lawsuit was filed. (*Melgoza v. City of Modesto*, E.D. Cal.

27  Case No. 1:11-cv-00066-AWI-BAM.) On March 4, 2013, a verdict for Lilia Melgoza against Defendant

28  CITY OF MODESTO and Officer Shane Castro on a negligence claim was entered.

d.      On December 4, 2009, Defendant MODESTO POLICE DEPARTMENT's police officer Mark Ulrich deployed his police canine into an abandoned building to attack Armando Olvera, a sleeping occupant in the building, severely injuring him. A civil rights lawsuit was filed. (*Olvera v. City of Modesto*, E.D. Cal. Case No. 1:11-cv-00540-AWI-GSA.) Defendant CITY OF MODESTO settled the case for $105,000, before trial.

e.      On May 28, 2010, Defendant MODESTO POLICE DEPARTMENT's police detective James Rokaitis pistol-whipped and shot three times Joshua Mordoff, an unarmed and non-threating "peeping tom" suspect. A civil rights lawsuit was filed. (*Mordoff v. City of Modesto*, E.D. Cal. Case No. 1:11-cv-01039-AWI-SAB.) Defendant CITY OF MODESTO settled the case for $150,000, before trial.

f.      On September 6, 2010, Defendant MODESTO POLICE DEPARTMENT's police officers Defendant JOSEPH LAMANTIA, Robert Laxton, and Bradley Peterson responded to a domestic disturbance involving Francisco Moran. Officer Bradley Peterson used a taser on Francisco Moran, who refused commands to raise his hands up. Francisco Moran reached for the metal handle of a spatula and Defendant JOSEPH LAMANTIA and Officer Robert Laxton shot Francisco Moran, killing him.

g.      On December 30, 2010, Defendant MODESTO POLICE DEPARTMENT's police officers Ronald Ziya and Caeli Koehler responded to a residence to conduct a welfare check on Brian Reed, a reportedly suicidal man who held a three-inch blade pocketknife to his own chest. Officers Ronald Ziya and Caeli Koehler advanced towards Brian Reed, shouting commands and forcing a confrontation, and Brian Reed moved away from the officers. Officer Ronald Ziya shot Brian Reed multiple times, permanently disabling him and causing him to sustain cognitive deficits. A civil rights lawsuit was filed. (*Reed v. City of Modesto*, E.D. Cal. Case No. 1:11-cv-01083-AWI-GSA.) On March 18, 2013, a verdict and judgment for Brian Reed was entered against Defendant CITY OF MODESTO and Officers Ronald Ziya and Caeli Koehler. Defendant CITY OF MODESTO settled the case for $850,000, after trial. Defendant MODESTO POLICE DEPARTMENT destroyed its investigation of Brian Reed's officer-involved shooting.

h.      On April 5, 2011, Defendant MODESTO POLICE DEPARTMENT's police officers Daniel Key, Brian Ferguson, Benjamin Kroutil, Jonathan Griffith, and Ben Brandvold stormed

16

into the home of Rosa Letona, Natalie Letona, and Rosemary Banuelos. The officers had no warrant and terrorized the home's occupants, including by pointing firearms at occupants and threatening to shoot the family's dog, in an effort to pressure one of the occupants to consent to her vehicle being repossessed and towed from the home. A civil rights lawsuit was filed. (*Letona v. City of Modesto*, E.D. Cal. Case No. 1:12-cv-00782-AWI-SAB.) Defendant CITY OF MODESTO settled the case for $120,000, before trial.

i.     On January 12, 2013, Defendant MODESTO POLICE DEPARTMENT's police officers Randy Bolinger and Dave Watson confronted and assaulted Jack Smith, including by punching him in the back of the head and six times in the face, fracturing facial bones and his jaw. The officers failed to activate their body-worn cameras ("BWC"), in violation of department policy. Defendant MODESTO POLICE DEPARTMENT's investigation "Sustained" allegations of excessive force and failure-to-activate-BWC but found all other conduct "within policy" and refused to impose discipline against the involved officers. (IA13-019.) A civil rights lawsuit was filed. (*Smith v. City of Modesto*, E.D. Cal. Case No. 1:14-cv-01285-LJO-MJS.) Defendant CITY OF MODESTO settled the case for $165,000, before trial.

j.     On August 22, 2013, Defendant MODESTO POLICE DEPARTMENT's police Natalia Enero and Joseph Bottoms contacted Nicholas Freitas, a then-10-year-old child, suspected of lighting fire to a paper magazine placed under a residential garbage can. Officer Natalia Enero grabbed Nicholas Freitas by the neck and threw him to the ground, while holding her arm around the child's neck. Defendant MODESTO POLICE DEPARTMENT's supervisory personnel concluded that the use-of-force was "[t]roublesome but … not enough to put [the officer] on admin leave. . . not enough to take her off the street." Lieutenant David Van Diemen concluded that Officer Natalia Enero's assault on the child was only "potential misconduct," explaining: "The child was not injured, and it occurred in front of the child's mother who had no issue with the use of force, and was actually appreciative of it." Officer Natalia Enero lied about the reason why she assaulted the child during the internal affairs investigation, stating that the assault was necessary because the child slapped his mother's hand away—but Officer Natalia Enero was unable to locate the alleged "slap" for investigators while reviewing her own body-worn camera recording of the assault. Officer Natalia Enero received a "written reprimand" but no meaningful discipline. (IA13-025.) Officer Natalia Enero is currently a Deputy District Attorney for the

17

Merced County District Attorney's Office.

k.      On October 17, 2014, Defendant MODESTO POLICE DEPARTMENT's police officer David Wallace arrived at a residence to conduct a welfare check, after a 9-1-1 call was received. Jesse Montelongo answered the door. Officer David Wallace pointed his firearm and demanded that Jesse Montelongo show his hand. Jesse Montelongo tossed a book in Officer David Wallace's direction and began to close the door. Officer David Wallace turned away as the book was tossed in his direction, then turned back towards Jesse Montelongo and fired a bullet into Jesse Montelongo's chest, as the door shut. Defendant MODESTO POLICE DEPARTMENT's investigation concluded that Jesse Montelongo's officer-involved shooting was "within policy." (FD14-002.) A civil rights lawsuit was filed. (*Montelongo v. City of Modesto*, E.D. Cal. Case No. 1:15-cv-01605-TLN-BAM.) The case remains pending.

l.      On November 12, 2014, Defendant MODESTO POLICE DEPARTMENT's police officers Dave Watson and Matt Ponce contacted Maleek Franklin, a then-minor. Officer Dave Watson concluded that Maleek Franklin was making "furtive movements" and decided to detain him. The officers struggled to detain Maleek Franklin and a gun fell from his pant leg during the struggle. The officers pulled Maleek Franklin's shirt off during the struggle, leaving his upper body unclothed. Officer Dave Watson tased Maleek Franklin several times, causing him to fall to the ground injured and to surrender. Officer Matt Ponce kicked Maleek Franklin three times, in his body and chest, after he had fallen to the ground and surrendered. Officer Matt Ponce lied during the internal affairs investigation, falsely stating that he kicked Maleek Franklin because his left hand was not visible and he "may have another gun." Officer Dave Watson's body-worn camera recording revealed that both of Maleek Franklin's hands were visible and empty during each of Officer Matt Ponce's kicks. Defendant MODESTO POLICE DEPARTMENT's investigation found the allegation of excessive force "Unfounded." (IA14-052.) Officer Matt Ponce was not disciplined.

m.      On December 20, 2014, Defendant MODESTO POLICE DEPARTMENT's police officers Brian Ferguson, David Wallace, Patrick Yokom, and John Flora responded to a 9-1-1 call reporting a potentially-mentally ill man smashing car windows and possibly in possession of a handgun. The officers confronted Harold Matus, a man fitting the description of the reported suspect, on a

residential street. The officers instructed Harold Matus to put his hands up and he responded: "Fuck you!" Officer Brian Ferguson shot Harold Matus' body twice with a less-lethal beanbag shotgun, without warning. Harold Matus immediately surrendered. Defendant MODESTO POLICE DEPARTMENT's investigation found the allegation of excessive force "Exonerated." (IA15-001.)

n.      On January 12, 2015, Defendant MODESTO POLICE DEPARTMENT's police officers John Lee and Randy Raduechel forcibly entered a home, without a warrant, and over the protest of its occupants. Officer John Lee pushed 67-year-old Patricia Mugrauer to the ground as he forcibly entered the home, causing her to fracture her left hip. Defendant GALEN CARROLL sought a "legal opinion" from the Modesto City Attorney's Office during the internal affairs investigation, asking: "whether or not Officer Lee's initial entry into the residence was lawful." In response, the Modesto City Attorney's Office responded that officer Lee's entry was unlawful but suggested that Officer John Lee could change his legal justification for entering the home from "conduct[ing] an investigation" to "acting under the community caretaking function" to avoid violating constitutional rights. Defendant MODESTO POLICE DEPARTMENT's supervisor recommended that the excessive force allegation against Officer John Lee be "Sustained." Defendant MODESTO POLICE DEPARTMENT's disposition classified the unlawful entry allegation "Other" or "Exonerated" and the excessive force allegation as "Other." (IA15-011.) A civil rights lawsuit was filed. (*Mugrauer v. City of Modesto*, E.D. Cal. Case No. 1:16-cv-00480-AWI-SAB.) A judgment for the plaintiffs for $745,651.01 was entered, before trial.

o.      On October 17, 2015, Defendant MODESTO POLICE DEPARTMENT's police officer Defendant MICHAEL CALLAHAN observed Gino Paredes enter and rob a gas station while holding a gun (later determined to be an airsoft replica). Defendant MICHAEL CALLAHAN took cover directly outside of the gas station building, kneeling behind a structure with his firearm pointed. Gino Paredes exited the gas station and began to run in the direction opposite Defendant MICHAEL CALLAHAN, towards an empty alley next to the gas station which was blocked by a fence. Defendant MICHAEL CALLAHAN fired multiple errant rounds at Gina Paredes' back as he fled. Gino Paredes attempted to climb the fence and Defendant MICHAEL CALLAHAN again fired at Gino Paredes' back, striking him with a single shot, killing him. Defendant MODESTO POLICE DEPARTMENT's disposition of the investigation concluded that Defendant MICHAEL CALLAHAN's shooting was

19

1   "within policy." (FD15-003.)

2           p.      On February 14, 2016, Defendant MODESTO POLICE DEPARTMENT's police

3   officers John Wesley and Tyler Houston conducted a traffic stop. Sherman August was a vehicle in the

4   vehicle stopped and fled from the passenger-side of vehicle, as it pulled-over. Sherman August fled on

5   foot into a nearby parking lot, while holding a revolver in his right hand. Officer Tyler Houston pursued

6   Sherman August on foot. Sherman August dropped a revolver while running from Officer Tyler Houston.

7   Officer Tyler Houston shot at Sherman August's back three times, as he fled, striking him twice on the

8   lower back. Officer Tyler Houston's body-worn camera captured Sherman August's shooting. Defendant

9   MODESTO POLICE DEPARTMENT's disposition of the investigation concluded that the shooting was

10  "within policy." (FD16-001.)

11          q.      On April 10, 2016, Defendant MODESTO POLICE DEPARTMENT's police

12  officers Kalani Souza, Edgar Villalpando, and David Wallace located and followed Lonnie Ball, a

13  suspect who was accused by his ex-wife of violating a stay-away restraining order. The officers followed

14  Lonnie Ball to the home of his ex-wife, when he parked his vehicle in the  driveway, exited the vehicle

15  with a pistol in his hand, and turned to walk towards the home's front door. Each of the three officers

16  opened fire, striking Lonnie Ball four times in the back. Officer Kalani Souza fired 10 rounds, Officer

17  Edgar Villalpando fired six round, and Officer David Wallace fired three rounds. The officers scattered

18  numerous rounds in the direction of the home, where 13 "impact sites" were located on the home's

19  exterior and at least "three bullets continued into the residence," putting the occupants inside at risk.

20  Officer David Wallace failed to activate his body-worn camera and did not record his actions before and

21  during the shooting. Defendant MODESTO POLICE DEPARTMENT's disposition of the investigation

22  concluded the shooting was "within policy." (FD16-003.) No discipline resulted from the incident.

23          r.      On June 7, 2016, Defendant MODESTO POLICE DEPARTMENT's police

24  officers Defendants ALEX BETTIS and JOSEPH LAMANTIA were involved in a drug bust turned

25  officer-involved shooting incident. Defendants ALEX BETTIS and JOSEPH LAMANTIA were not

26  equipped with body-worn cameras and, as a result, there are no recordings of the shooting. The

27  investigation following the officer-involved shooting found that, after the suspect in a vehicle had been

28  shot, Defendant ALEX BETTIS "quickly transition[ed] to a bean bag shotgun and blindly fire[d] nine

Super sock bean bag shotgun rounds into the heavily tinted rear windows of the suspect vehicle," which the investigation found "very concerning" because it "was ineffective or had limited success" and "placed anyone who may have been seated in the back seat in jeopardy of suffering a serious or fatal injury." Defendant MODESTO POLICE DEPARTMENT's disposition of the investigation concluded that the shooting was "within policy." (FD16-005.) No discipline resulted from the incident.

s.   On October 24, 2016, Defendant MODESTO POLICE DEPARTMENT's police officers, including Defendants ALEX BETTIS and JOSEPH LAMANTIA and Tyler Caldwell, Darien Wilson, and Joshua Shackelford, used tasers and a beanbag shotgun to subdue Garrett Schmidt, a mentally ill man who had broken into and barricaded himself within a residence. Defendant ALEX BETTIS fired a shotgun with beanbag rounds at Garrett Schmidt, who was lying on ground, from 4-to-5 feet away, or possibly even "closer." Garrett Schmidt died after the arrest. Defendant ALEX BETTIS admitted during the internal affairs investigation that he was "probably pushing the envelope" by shooting Garrett Schmidt at such a close range with a beanbag shotgun. Defendant MODESTO POLICE DEPARTMENT's internal review "found a potential officer safety-training issue with respect to the beanbag being deployed so close to the other officers around the suspect" but concluded "Training Issues: None" and found each use of force "within policy." (IA16-048.) A civil rights lawsuit was filed. (*Schmidt v. City of Modesto*, E.D. Cal. Case No. 1:17-cv-01411-DAD-MJS.) Defendant CITY OF MODESTO settled the case for $75,000, before trial.

t.   On November 6, 2017, Defendant MODESTO POLICE DEPARTMENT's police officers Jerry Ramar and Ryan Olson confronted Jason Perkins, a felony warrant suspect, as he sat in the driver's seat of a vehicle parked in a commercial parking lot. Sergeant Jerry Ramar, a supervisor, failed to activate his body-worn camera, charged at the vehicle with his firearm drawn, and shot Jason Perkins twice, causing the vehicle to move in reverse for a short distance before coming to a stop. Sergeant Jerry Ramar demanded that Jason Perkins show his hands. Jason Perkins explained that he could not raise his left arm which was disabled by a gunshot wound. Sergeant Jerry Ramar shot Jason Perkins twice more. Sergeant Jerry Ramar again demanded that Jason Perkins show his hands. Jason Perkins attempted to comply with the commands by moving his injured body. Sergeant Jerry Ramar shot Jason Perkins twice more. Jason Perkins sustained severe gunshots wounds to his jaw, chest, and left arm. Officer Ryan

1   Olson removed Jason Perkins from his vehicle by dropping his limp, unconscious body on the ground
2   and handcuffing his arms behind his back. Multiple policies were violated during the course of the
3   incident and Defendant MODESTO POLICE DEPARTMENT failed to preserve evidence associated
4   with the incident, including Sergeant Jerry Ramar's cell phone and performance evaluations. Defendant
5   MODESTO POLICE DEPARTMENT's investigation concluded that the shooting was "Within Policy."
6   (FD17-002.) Sergeant Jerry Ramar was supposed to receive a "written reprimand" for failing to activate
7   his body-worn camera but no such reprimand was issued. A civil rights lawsuit was filed. (*Perkins v. City*
8   *of Modesto*, E.D. Cal. Case No. 1:19-cv-00126-NONE-EPG.) Defendant CITY OF MODESTO was
9   sanctioned for failure to preserve evidence in the case. The case remains pending.

10         u.    On October 20, 2020, Defendant MODESTO POLICE DEPARTMENT's police
11   officers Defendant JOSEPH LAMANTIA and Jacob Mertz, Sean Martin, and Brian Binkley located
12   David Cummings Jr., a felony suspect. The officers approached David Cummings Jr. as he sat in parked
13   car, he fled on-foot, and the officers opened fired, shooting him in the back and legs, with one of the
14   bullets exiting his chest. (< https://www.recordnet.com/story/news/crime/2020/10/28/stockton-man-
15   wanted-connection-double-homicide-modesto/6064847002/ >.)

16         v.    On December 29, 2020, Defendant MODESTO POLICE DEPARTMENT's police
17   officer Defendant JOSEPH LAMANTIA shot Trevor Seever several times, killing him. Trevor Seever
18   was unarmed when he was shot and killed by Defendant JOSEPH LAMANTIA. (<
19   https://www.modbee.com/news/local/article248324315.html >.)

20         88.    On information and belief, Defendants CITY OF MODESTO, MODESTO POLICE
21   DEPARTMENT, and GALEN CARROLL were aware of numerous incidents of police officers' use of
22   unreasonable and excessive force, including those incidents identified above, but repeatedly refused or
23   failed to take appropriate corrective action, including discipline, re-training, and/or changes to policies or
24   procedures. Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN
25   CARROLL expressly and impliedly condoned the use of unreasonable and excessive force, emboldening
26   their personnel, including Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL
27   CALLAHAN, to continue to employ unreasonable and excessive force. Defendants CITY OF
28   MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL perpetuated the problem

by knowingly turning a blind eye to the abuses, ignoring or refusing to investigate complaints of police officers' misconduct, acquiescing in and implicitly condoning the misconduct by perpetuating a culture of impunity, failing meaningfully to discipline, re-train, or otherwise penalize police officers' misconduct, failing to hold personnel accountable for violations of law or policies, and creating or fostering an environment where subordinates believed they could act with impunity and "get away with anything."

89.     Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL never sustained an officer-involved shooting complaint. Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL have received at least 11 officer-involved shooting complaints. Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL resolved 10 of the 11 complaints as "within policy," and one as "closed." The officer-involved shooting on Jason Perkins on November 6, 2017, was "closed" without a resolution of the complaint because the Sergeant Jerry Ramar, the shooting officer, voluntarily resigned his position with Defendant MODESTO POLICE DEPARTMENT, prior to the completion of the investigation. Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL have admitted that Jason Perkins' officer-involved shooting would have been resolved as "within policy," if Sergeant Jerry Ramar had not resigned.

90.     Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL never resolved an officer-involved shooting incident inconsistent with the findings of the Stanislaus County District Attorney's Office's investigation of the same incident.

91.     Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL have failed meaningfully to discipline, re-train, or otherwise penalize Defendant ALEX BETTIS based on his documented history of use of unreasonable and excessive force, including: (1) the "very concerning" incident where Defendant ALEX BETTIS "blindly fire[d] nine Super sock bean bag shotgun rounds into the heavily tinted rear windows of the suspect vehicle," which "placed anyone who may have been seated in the back seat in jeopardy of suffering a serious or fatal injury" (FD16-005); (2) the incident where Defendant ALEX BETTIS admitted that he was "probably pushing the envelope" when he shot a mentally ill man with a beanbag shotgun while the man was lying on ground from 4-to-5

23

feet away, or possibly even "closer" (IA16-048 & *Schmidt v. City of Modesto*, E.D. Cal. Case No. 1:17-cv-01411-DAD-MJS); and (3) the incident giving rise to this case, where Defendant ALEX BETTIS admitted that he "fucked up" by shooting KIM JACKSON in the back with a breaching round, when he believed that his shotgun was loaded with less-lethal beanbag rounds.

92.     Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL have failed meaningfully to discipline, re-train, or otherwise penalize Defendant JOSEPH LAMANTIA based on his documented history of use of unreasonable and excessive force and involvement in at least four officer-involved shootings (< https://www.nytimes.com/2021/01/07/us/modesto-church-police-shooting.html >), including: (1) the officer-involved shooting and death of Francisco Moran, who reached for a spatula prior to being shot; (2) the officer-involved shooting of David Cummings Jr., a felony suspect who fled on-foot and was shot in the back; (3) the officer-involved shooting and death of Trevor Seever, who unarmed and surrendering; and (4) the officer-involved shooting and death giving rise to this case, where Defendant JOSEPH LAMANTIA shot KIM JACKSON in the chest and then shot at her back, when she turned and staggered away.

93.     Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL have failed meaningfully to discipline, re-train, or otherwise penalize Defendant MICHAEL CALLAHAN based on his documented history of use of unreasonable and excessive force and involvement in at least one officer-involved shooting, wherein he shot a fleeing suspect in the back, killing him. (FD15-003.)

**Ratification**

94.     On April 11, 2017, Defendant MODESTO POLICE DEPARTMENT convened a "Shooting Review Board," consisting of Defendant GALEN CARROLL, Assistant Police Chief Rick Armendariz, and Captains David Van Diemen, Craig Gundlach, and Brian Findlen. Therein, the Shooting Review Board unanimously determined that the actions of Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN in connection with the officer-involved shooting of KIM JACKSON were "justified and within departmental policy."

95.     On January 26, 2021, Defendants CITY OF MODESTO, MODESTO POLICE

24

1   DEPARTMENT, and GALEN CARROLL refused to resolve Plaintiffs ESTATE OF KIM JACKSON,

2   MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA JACKSON's citizen

3   complaint in compliance with Defendant MODESTO POLICE DEPARTMENT's policies.

4   **FIRST CLAIM**

5   **Excessive Force**

6   **(U.S. Const., Amend. IV; 42 U.S.C. § 1983)**

7       96.     Plaintiff ESTATE OF KIM JACKSON (pursuant to Cal. Code Civ. Proc. § 377.30)

8   asserts this Claim against Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT,

9   GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

10      97.     The allegations of the preceding paragraphs 1 to 95 are realleged and incorporated, to the

11  extent relevant and as if fully set forth in this Claim.

12      98.     Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, acting

13  or purporting to act in the performance of their official duties as law enforcement officers, used

14  unreasonable and excessive force against KIM JACKSON, in violation of the Fourth Amendment (as

15  incorporated through the Fourteenth Amendment) to the U.S. Constitution.

16      99.     Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN

17  CARROLL, acting or purporting to act under color of state law and as policymaking authorities,

18  maintained policies or customs of action and inaction resulting in harm to KIM JACKSON, in violation

19  of the Fourth Amendment (as incorporated through the Fourteenth Amendment) to the U.S. Constitution.

20      100.    Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and

21  MICHAEL CALLAHAN's actions and inactions were motivated by evil motive or intent, involved

22  reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

23      101.    KIM JACKSON was injured as a direct and proximate result of Defendants CITY OF

24  MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH

25  LAMANTIA, and MICHAEL CALLAHAN's actions and inactions, entitling Plaintiff ESTATE OF KIM

26  JACKSON to receive compensatory damages against Defendants CITY OF MODESTO, MODESTO

27  POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and

28  MICHAEL CALLAHAN; and punitive damages against Defendants GALEN CARROLL, ALEX

1 | BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

2 |      WHEREFORE, Plaintiff ESTATE OF KIM JACKSON prays for relief as hereunder appears.

3 | **<u>SECOND CLAIM</u>**

4 | **Unwarranted Interference with Familial Association**

5 | **(U.S. Const., Amend. XIV; 42 U.S.C. § 1983)**

6 |     102.    Plaintiffs MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA

7 | JACKSON asserts this Claim against Defendants ALEX BETTIS, JOSEPH LAMANTIA, and

8 | MICHAEL CALLAHAN.

9 |     103.    The allegations of the preceding paragraphs 1 to 78 are realleged and incorporated, to the

10 | extent relevant and as if fully set forth in this Claim.

11 |     104.    Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, acting

12 | or purporting to act in the performance of their official duties as law enforcement officers, used

13 | unreasonable and excessive force against KIM JACKSON, terminating and interfering with Plaintiffs

14 | MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA JACKSON's familial

15 | relationship with KIM JACKSON, in the violation of constitutional rights protected by the Fourteenth

16 | Amendment to the U.S. Constitution.

17 |     105.    Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's

18 | actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to

19 | constitutional rights, or were wantonly or oppressively done.

20 |     106.    Plaintiffs MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA

21 | JACKSON were injured as a direct and proximate result of Defendants ALEX BETTIS, JOSEPH

22 | LAMANTIA, and MICHAEL CALLAHAN's actions and inactions, entitling them to receive

23 | compensatory and punitive damages against Defendants ALEX BETTIS, JOSEPH LAMANTIA, and

24 | MICHAEL CALLAHAN.

25 |     WHEREFORE, Plaintiffs MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON,

26 | and ANNA JACKSON pray for relief as hereunder appears.

27 | \ \ \

28 | \ \ \

## THIRD CLAIM

### Unwarranted Interference with Familial Association

### (U.S. Const., Amend. I; 42 U.S.C. § 1983)

107.     Plaintiffs MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA JACKSON asserts this Claim against Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

108.     The allegations of the preceding paragraphs 1 to 78 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

109.     Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, acting or purporting to act in the performance of their official duties as law enforcement officers, used unreasonable and excessive force against KIM JACKSON, terminating and interfering with Plaintiffs MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA JACKSON's familial relationship with KIM JACKSON, in the violation of constitutional rights protected by the First Amendment (as incorporated through the Fourteenth Amendment) to the U.S. Constitution.

110.     Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly or oppressively done.

111.     Plaintiffs MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA JACKSON were injured as a direct and proximate result of Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions, entitling them to receive compensatory and punitive damages against Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

WHEREFORE, Plaintiffs MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA JACKSON pray for relief as hereunder appears.

## FOURTH CLAIM

### Rehabilitation Act

### (29 U.S.C. § 701, *et seq.*)

112.     Plaintiff ESTATE OF KIM JACKSON asserts this Claim against Defendants CITY OF

27

1    MODESTO and MODESTO POLICE DEPARTMENT.

2        113.    The allegations of the preceding paragraphs 1 to 95 are realleged and incorporated, to the

3    extent relevant and as if fully set forth in this Claim.

4        114.    Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT each

5    qualify as a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104. On

6    information and belief, Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT

7    receive federal financial assistance. KIM JACKSON had a mental impairment that substantially limited

8    one or more major life activities, or a record of such an impairment, at all times material herein.

9        115.    Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, acting

10   or purporting to act in the performance of their official duties as law enforcement officers, failed

11   reasonably to accommodate KIM JACKSON's disability in the course of investigation or arrest, causing

12   greater injury or indignity in that process than other arrestees, with deliberate indifference or reckless

13   disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq*. A reasonable accommodation

14   would have included, for example: (a) approaching KIM JACKSON in a non-confrontational manner,

15   without displaying or threatening the use of force; (b) speaking to KIM JACKSON in a non-

16   confrontational manner, with an appropriate tone of voice and without threatening the use of force;

17   and/or (c) interacting with KIM JACKSON in a non-confrontational manner, including appropriate body

18   language, de-escalation, and spacing techniques.

19       116.    Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN

20   CARROLL, acting or purporting to act under color of state law and as policymaking authorities,

21   maintained policies or customs of action and inaction resulting in harm to KIM JACKSON, with

22   deliberate indifference or reckless disregard, in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et*

23   *seq*. A reasonable accommodation would have included promulgation and implementation of appropriate

24   policies and customs which prepared police officers to interact with persons suffering from mental

25   disability or substance abuse, for example: (a) how to approach such persons; (b) how to speak to such

26   persons; (c) how to interact with such persons, including using appropriate body language and tone of

27   voice; (d) how to respect the personal space of such persons; and/or (e) how to deescalate, without use of

28   force, incidents involving such persons.

117.     KIM JACKSON was injured as a direct and proximate result of Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions, entitling Plaintiff ESTATE OF KIM JACKSON to receive compensatory and nominal damages against Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT.

WHEREFORE, Plaintiff ESTATE OF KIM JACKSON prays for relief as hereunder appears.

## FIFTH CLAIM

### Americans with Disabilities Act

### (42 U.S.C. § 12101, *et seq.*)

118.     Plaintiff ESTATE OF KIM JACKSON asserts this Claim against Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT.

119.     The allegations of the preceding paragraphs 1 to 95 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim

120.     Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT each qualify as a "public entity" within the meaning of 42 U.S.C. § 12102(1) and 28 C.F.R. § 35.104. KIM JACKSON had a mental impairment that substantially limited one or more major life activities, or a record of such an impairment, at all times material herein.

121.     Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, acting or purporting to act in the performance of their official duties as law enforcement officers, failed reasonably to accommodate KIM JACKSON's disability in the course of investigation or arrest, causing greater injury or indignity in that process than other arrestees, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* A reasonable accommodation would have included, for example: (a) approaching KIM JACKSON in a non-confrontational manner, without displaying or threatening the use of force; (b) speaking to KIM JACKSON in a non-confrontational manner, with an appropriate tone of voice and without threatening the use of force; and/or (c) interacting with KIM JACKSON in a non-confrontational manner, including appropriate body language, de-escalation, and spacing techniques.

122.     Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN

29

CARROLL, acting or purporting to act under color of state law and as policymaking authorities, maintained policies or customs of action and inaction resulting in harm to KIM JACKSON, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. A reasonable accommodation would have included promulgation and implementation of appropriate policies and customs which prepared police officers to interact with persons suffering from mental disability or substance abuse, for example: (a) how to approach such persons; (b) how to speak to such persons; (c) how to interact with such persons, including using appropriate body language and tone of voice; (d) how to respect the personal space of such persons; and/or (e) how to deescalate, without use of force, incidents involving such persons.

123.   KIM JACKSON was injured as a direct and proximate result of Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions, entitling Plaintiff ESTATE OF KIM JACKSON to receive compensatory and nominal damages against Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT.

WHEREFORE, Plaintiff ESTATE OF KIM JACKSON prays for relief as hereunder appears.

## SIXTH CLAIM

### Excessive Force

### (Cal. Const., Art. I, § 13)

124.   Plaintiff ESTATE OF KIM JACKSON (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

125.   The allegations of the preceding paragraphs 1 to 95 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

126.   Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, acting or purporting to act in the performance of their official duties as law enforcement officers, used unreasonable and excessive force against KIM JACKSON, in violation of Article I, Section 13 of the California Constitution.

127.   Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN

CARROLL, acting or purporting to act under color of state law and as policymaking authorities, maintained policies or customs of action and inaction resulting in harm to KIM JACKSON, in violation of Article I, Section 13 of the California Constitution.

128.    Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a) and 820(a), for injuries proximately caused by the acts and omissions of their employees acting within the scope of their employment, including Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

129.    Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

130.    KIM JACKSON was injured as a direct and proximate result of Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions, entitling Plaintiff ESTATE OF KIM JACKSON to receive compensatory damages against Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN; and punitive damages against Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

WHEREFORE, Plaintiff ESTATE OF KIM JACKSON prays for relief as hereunder appears.

## SEVENTH CLAIM

### Tom Bane Civil Rights Act

### (Cal. Civ. Code § 52.1)

131.    Plaintiff ESTATE OF KIM JACKSON (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

132.    The allegations of the preceding paragraphs 1 to 95 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

\ \ \

Excessive Force

133.    Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, acting or purporting to act in the performance of their official duties as law enforcement officers, used unreasonable and excessive force against KIM JACKSON, with deliberate indifference or reckless disregard of rights protected by the Fourth Amendment (as incorporated through the Fourteenth Amendment) to the U.S. Constitution and Article I, Section 13 of the California Constitution.

134.    Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL, acting or purporting to act under color of state law and as policymaking authorities, maintained policies or customs of action and inaction resulting in harm to KIM JACKSON, with deliberate indifference or reckless disregard of rights protected by the Fourth Amendment (as incorporated through the Fourteenth Amendment) to the U.S. Constitution and Article I, Section 13 of the California Constitution.

Rehabilitation Act & Americans with Disabilities Act

135.    Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, acting or purporting to act in the performance of their official duties as law enforcement officers, failed reasonably to accommodate KIM JACKSON's disability in the course of investigation or arrest, causing greater injury or indignity in that process than other arrestees, with deliberate indifference or reckless disregard of rights protected by the Rehabilitation Act, 29 U.S.C. § 794, *et seq*. and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. A reasonable accommodation would have included, for example: (a) approaching KIM JACKSON in a non-confrontational manner, without displaying or threatening the use of force; (b) speaking to KIM JACKSON in a non-confrontational manner, with an appropriate tone of voice and without threatening the use of force; and/or (c) interacting with KIM JACKSON in a non-confrontational manner, including appropriate body language, de-escalation, and spacing techniques.

136.    Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL, acting or purporting to act under color of state law and as policymaking authorities, maintained policies or customs of action and inaction resulting in harm to KIM JACKSON, with deliberate indifference or reckless disregard of rights protected by the Rehabilitation Act, 29 U.S.C. §

32

794, *et seq*. and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. A reasonable accommodation would have included promulgation and implementation of appropriate policies and customs which prepared police officers to interact with persons suffering from mental disability or substance abuse, for example: (a) how to approach such persons; (b) how to speak to such persons; (c) how to interact with such persons, including using appropriate body language and tone of voice; (d) how to respect the personal space of such persons; and/or (e) how to deescalate, without use of force, incidents involving such persons.

<u>Common Allegations</u>

137.    Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a) and 820(a), for injuries proximately caused by the acts and omissions of their employees acting within the scope of their employment, including Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

138.    Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

139.    KIM JACKSON was injured as a direct and proximate result of Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions, entitling Plaintiff ESTATE OF KIM JACKSON to receive compensatory and treble damages and civil penalties against Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN; and punitive damages against Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

WHEREFORE, Plaintiff ESTATE OF KIM JACKSON prays for relief as hereunder appears.

**EIGHTH CLAIM**

**Assault / Battery**

140.    Plaintiff ESTATE OF KIM JACKSON (pursuant to Cal. Code Civ. Proc. § 377.30) asserts this Claim against Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT,

33

GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

141.    The allegations of the preceding paragraphs 1 to 95 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

142.    Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, acting or purporting to act in the performance of their official duties as law enforcement officers, used unreasonable and excessive force against KIM JACKSON.

143.    Defendant GALEN CARROLL, acting or purporting to act under color of state law and as a policymaking authority, maintained policies or customs of action and inaction resulting in harm to KIM JACKSON.

144.    Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a) and 820(a), for injuries proximately caused by the acts and omissions of their employees acting within the scope of their employment, including Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

145.    Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

146.    KIM JACKSON was injured as a direct and proximate result of Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions, entitling Plaintiff ESTATE OF KIM JACKSON to receive compensatory damages against Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN; and punitive damages against Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

WHEREFORE, Plaintiff ESTATE OF KIM JACKSON prays for relief as hereunder appears.

## NINTH CLAIM

### Negligence

147.    Plaintiff ESTATE OF KIM JACKSON (pursuant to Cal. Code Civ. Proc. § 377.30)

34

asserts this Claim against Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

148.    The allegations of the preceding paragraphs 1 to 95 are realleged and incorporated, to the extent relevant and as if fully set forth in this Claim.

149.    Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, acting or purporting to act in the performance of their official duties as law enforcement officers, owed KIM JACKSON duties of care and breached those duties.

150.    Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a) and 820(a), for injuries proximately caused by the acts and omissions of their employees acting within the scope of their employment, including Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

151.    Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

152.    KIM JACKSON was injured as a direct and proximate result of Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions, entitling Plaintiff ESTATE OF KIM JACKSON to receive compensatory damages against Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN; and punitive damages against Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

WHEREFORE, Plaintiff ESTATE OF KIM JACKSON prays for relief as hereunder appears.

## TENTH CLAIM

### Wrongful Death

### (Cal. Code Civ. Proc. § 377.60)

153.    Plaintiffs MATTHEW BORING and ALYSSA CABRERA asserts this Claim against Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

154.    The allegations of the preceding paragraphs 1 to 95 are realleged and incorporated, to the

35

extent relevant and as if fully set forth in this Claim.

155.    Defendants ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, acting or purporting to act in the performance of their official duties as law enforcement officers, caused KIM JACKSON's death by wrongful act and neglect.

156.    Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, and GALEN CARROLL, acting or purporting to act under color of state law and as policymaking authorities, maintained policies or customs of action and inaction which caused KIM JACKSON's death by wrongful act and neglect.

157.    Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT are vicariously liable, through the principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a) and 820(a), for injuries proximately caused by the acts and omissions of their employees acting within the scope of their employment, including Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

158.    Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions constituted oppression, fraud, and/or malice resulting in great harm.

159.    KIM JACKSON was injured as a direct and proximate result of Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN's actions and inactions, entitling Plaintiff ESTATE OF KIM JACKSON to receive compensatory damages against Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN; and punitive damages against Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN.

WHEREFORE, Plaintiff ESTATE OF KIM JACKSON prays for relief as hereunder appears.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ESTATE OF KIM JACKSON, MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA JACKSON seek Judgment as follows:

1.    For an award of compensatory, general, special, and nominal damages against Defendants

36

CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, in excess of $10,000,000, according to proof at trial;

2.     For an award of exemplary/punitive damages against Defendants GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, in an amount sufficient to deter and to make an example of them, because their actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional and statutory rights, or were wantonly or oppressively done; and/or constituted oppression, fraud, or malice resulting in great harm;

3.     For an award of actual damages, treble damages, punitive damages, civil penalties, and any other available relief Defendants CITY OF MODESTO, MODESTO POLICE DEPARTMENT, GALEN CARROLL, ALEX BETTIS, JOSEPH LAMANTIA, and MICHAEL CALLAHAN, pursuant to Cal. Civ. Code §§ 52, 52.1, and any other statute as may be applicable (except that no punitive damages are sought against Defendants CITY OF MODESTO and MODESTO POLICE DEPARTMENT, pursuant to Cal. Civ. Code § 818);

4.     For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794, 42 U.S.C. § 12205, Cal. Civ. Code § 52.1, Cal. Code Civ. Proc. § 1021.5, and any other statute as may be applicable; and

5.     For an award of any other further relief, as the Court deems fair, just, and equitable.

Dated: March 15, 2021            Respectfully Submitted,

By: _____
Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Attorneys for Plaintiffs
ESTATE OF KIM JACKSON,
MATTHEW BORING, ALYSSA CABRERA,
GLENN JACKSON, and ANNA JACKSON

37

1

**JURY TRIAL DEMAND**

2

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs ESTATE OF KIM JACKSON,

3

MATTHEW BORING, ALYSSA CABRERA, GLENN JACKSON, and ANNA JACKSON.

4

Dated: March 15, 2021                    Respectfully Submitted,

5

6

7

By: _____

8

    Mark E. Merin
    Paul H. Masuhara
    LAW OFFICE OF MARK E. MERIN
    1010 F Street, Suite 300
    Sacramento, California 95814
    Telephone: (916) 443-6911
    Facsimile: (916) 447-8336

9

10

11

     Attorneys for Plaintiffs
     ESTATE OF KIM JACKSON,
     MATTHEW BORING, ALYSSA CABRERA,
     GLENN JACKSON, and ANNA JACKSON

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Estate of Jackson v. City of Modesto*, United States District Court, Eastern District of California, Case No. _____