1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

7
8

| | |
|---|---|
| **ESTATE OF KIM JACKSON, et al.,** | **CASE NO. 1:21-CV-0415 AWI EPG** |
| **Plaintiffs** | |
| **v.** | **ORDER ON DEFENDANTS' SECOND MOTION TO DISMISS** |
| **CITY OF MODESTO, et al.,** | |
| **Defendants** | (Doc. No. 29) |

        This case stems from a fatal encounter between decedent Kim Jackson ("Jackson") and members of the Modesto Police Department ("MPD").  Plaintiffs, who are Jackson's Estate ("the Estate") and family, bring claims under 42 U.S.C. § 1983 (for violations of the First, Fourth and Fourteenth Amendments based on excessive force, interference with familial relationships, and *Monell* liability), 29 U.S.C § 779 (the Rehabilitation Act ("RA")), 42 U.S.C. § 12101 et *seq.* (Title II of the Americans with Disabilities Act ("the ADA")), as well as state law claims for violations of the California Constitution, Cal. Civ. Code § 52.1 ("the Bane Act"), battery, negligence, and Cal. Code Civ. P. § 377.60 (wrongful death).  Following a first motion to dismiss, the active Complaint is the First Amended Complaint ("FAC") and the only remaining defendants are the City of Modesto ("the City") and MPD Police Chief Galen Carroll ("Carroll").  Currently before the Court is Defendants' second Rule 12(b)(6) motions to dismiss.  For the reasons that follow, the motion will be granted in part and denied in part.

### RULE 12(b)(6) FRAMEWORK

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon, 828 F.3d at 842.

### FACTUAL BACKGROUND

From the FAC, in October 2016, Jackson was 52 years old and suffered from mental health and substance abuse issues that substantially limited her ability to care for herself, concentrate, think, and communicate. Over the course of several years, Jackson had bipolar and alcohol use

disorders.  Jackson's issues caused her to become easily confused, defensive agitated, frustrated, stressed, fearful, anxious, and paranoid.  Jackson had difficulty processing information, verbalizing thoughts and intentions, and was known to lash out when she was exhibiting symptoms.  She had an extensive record of law enforcement contacts with the MPD under Cal. Wel. & Inst. Code § 5150 ("§ 5150").

On October 8, 2016, at 1:48 a.m. Glenn Jackson ("Glenn"), Jackson's father, called 911 from his home to report that Jackson was intoxicated and vandalizing his residence, but that no weapons were involved.

At 2:04 a.m., MPD officer Callahan and another police officer arrived and spoke with Glenn.  Jackson was no longer present, but Glenn explained that she had been drinking and had threatened suicide.  Glenn also explained that he did not want Jackson arrested, he just wanted her to leave the residence.  Callahan closed the case about thirty minutes later and left the residence.

At 3:04 a.m., Glenn called 911 and reported that Jackson had returned to his home and was armed with a knife.

At 3:09 a.m., Callahan and MPD officers Bettis and Lamantia arrived at Glenn's home. Bettis observed Jackson in the driveway and that she appeared to be agitated and screaming.  The officers discussed that they had been to the residence on prior occasions relating to Jackson, and Callahan explained that he intended to take Jackson into custody through a § 5150 mental health hold.  However, the officers did not develop a "gameplan" about how to approach or detain Jackson or reasonably accommodate Jackson's "present disabilities."  Callahan armed himself with a Taser, Lamantia armed himself with a pistol, and Bettis armed himself with a shotgun. Bettis's shotgun had been loaded with a breaching round, a special type of ammunition used to penetrate door locks but not meant to be used against people.

The officers walked toward the residence with their weapons unholstered and displayed. This show of force by the officers exacerbated Jackson's mental illness and exacerbated her fear and anxiety that the officers intended to harm her.  Jackson approached the officers in the street, and she had multi-colored kitchen knives in her hands.  The officers "triangulated" Jackson's position, and Jackson walked toward Lamantia.

Lamantia and Callahan then discharged their weapons.  Lamantia's bullet struck Jackson in the chest from a distance of 11 or 12 feet, while Callahan's taser probe struck Jackson's left wrist from a distance of 17 feet.  Jackson then dropped all of the knives that she had in her hand, turned away from the officers, and began to stagger away.  Jackson posed no threat to the officers or to anyone else after she turned and began staggering away.

While Jackson was staggering away from the officers, Bettis discharged his shotgun twice from a distance of 22 feet.  One of the rounds may have been a less-lethal "bean bag" round, but the other round discharged was a breaching round.  The breaching round penetrated Jackson's rib, left kidney, left adrenal, aorta, intestines, and stomach before finally lodging into her liver.

Lamantia also fired a second bullet at Jackson as she was staggering away.  The bullet grazed Jackson's right forearm from a distance of 17 feet.  Bettis and Lamantia both discharged their second rounds at the same time.

Jackson then collapsed on the ground.  She was transported to a hospital where she was pronounced dead.

That night, Bettis informed City police personnel that he had "fucked up" because he believed that he had previously loaded his shotgun with less-lethal bean bag rounds prior to shooting Jackson, but the shotgun was also loaded with a lethal breaching round.  Bettis also stated that he was "out of position" when the officers confronted Jackson.

The officers were all wearing bodycams which were activated prior to the shooting of Jackson.  The video from Lamantia's bodycam demonstrates Jackson's positioning during the officer involved shooting.

On October 10, 2016, the officers were interviewed regarding the shooting of Jackson.  Also on October 10, 2016, the City issued a public "news release" that described the shooting of Jackson as follows:

> Officers arrived and as they were walking up to the home, Jackson confronted them in the street, armed with multiple knives.  As officers were giving verbal commands for her to drop the knives, she advanced rapidly at them with knives raised above her head.  Officers utilized a taser, bean bags, and one officer used his duty weapon.  She was rushed to a local hospital where she succumbed to her injuries.

4

In April 2017, the MPD convened a "shooting review board" for the purposes of evaluating the shooting of Jackson.  The board consisted of Carroll, Assistant Police Chief Armendariz, and three Captains.  The board unanimously concluded that the shooting was justified and within policy.

In July 2018, the Stanislaus County District Attorney's Office issued a press release about the shooting death of Jackson pursuant to a county wide shooting investigation policy.  The press release indicated Jackson approached the three MPD officers with knives, refused to back away despite commands, and then ran towards Bettis and Lamantia.  The officers then shot Jackson.  Based on Jackson's conduct, the shooting of Jackson by Bettis, Lamantia, and Callahan was determined to be justified and in self-defense.

The City and Carroll did not make the bodycam footage available to Jackson's family or the public.  Plaintiffs allege that they did not know or have reason to know that the shooting of Jackson by MPD officers was not justified or that improper tactics and ammunition was used.  Plaintiff Alyssa Cabrera (Jackson's daughter) requested a copy of Jackson's autopsy report from the Stanislaus County Coroner shortly after Jackson's death.  However, the County Coroner never provided Cabrera with a copy of the autopsy report.  Further, Plaintiff Matthew Boring (Jackson's son) spoke with an MPD officer several months after Jackson's death.  The MPD officer knew Jackson was Boring's mother.  The MPD officer told Boring all evidence of the shooting had been gathered and reviewed by the MPD, which concluded that the officer involved shooting of Jackson was justified.  The Plaintiffs relied on the publicly provided information from the MPD, the Stanislaus County District Attorney, and the MPD's review of the shooting to conclude that the shooting of Jackson was justified and that there was no factual or legal basis to pursue relief.  Upon information and belief, the Defendants actively and intentionally concealed critical details of the officer-involved shooting which would have demonstrated that the shooting was unreasonable.  Specifically, the following information was never publicly revealed:  (1) Bettis shot Jackson in the back with a breaching round; (2) Bettis admitted that he had "fucked up" when he shot Jackson in the back with a breaching round; (3) Bettis admitted that he was out of position prior to shooting Jackson; and (4) the officers did not discuss a game plan for approaching and detaining Jackson.

It was not until November 2020 that Plaintiffs obtained access to the Shooting Review Board report and learned for the first time the unreasonable nature of the shooting and the improper customs and practices of the City that were at work.

On January 21, 2021, Plaintiffs submitted a government claim to the City regarding the officer involved shooting of Jackson.  On March 5, 2021, the City responded that the government claim was not timely and that Plaintiffs' only recourse was to seek leave to present a late claim. See Doc. No. 29-2 (Request of Judicial Notice) at Ex. B.  The FAC does not allege that Plaintiffs sought leave to file a late claim.

Plaintiffs allege that the MPD has two general unconstitutional policies.  First, the MPD failed to have policies that were consistent with POST Learning Domain 37, regarding People with Disabilities.  The MPD's general use of force policy did not provide guidance or training concerning how officers should handle mentally unstable individuals in connection with a use of force.  The MPD never implemented policies or training regarding detaining and arresting individuals that have disabilities or are taking substances that impair their ability to understand and respond to the police.  Second, the MPD has a policy or custom of tolerating excessive force. This policy is reflected in the conduct of the three officers in their use of force against Jackson, as well as a description of over 20 incidents spanning February 2009 to December 2020 in which MPD officers allegedly engaged in excessive force.


**DEFENDANTS' MOTION**

**I.**     **Statute of Limitations & Standing Regarding Survival Claims**

*Defendants' Arguments*

Defendants argue that the § 1983 excessive force, RA, ADA, and state law claims are all "survival claims."  As survival claims, they must have accrued while Jackson was alive.  To the extent that any of these claims accrued after Jackson's death on October 8, 2016, they are not truly survival claims and no Plaintiff could assert them on Jackson's behalf.  Because Jackson died on October 8, 2016, and suit was not filed until March 2021, all of the survival claims are barred by the applicable two year statute of limitations.

*Plaintiffs' Opposition*

Plaintiffs argue that dismissal is improper based on the Court's analysis on the first order to dismiss.  First, the Court held that it could not determine when the claims against the City and Carroll accrued based on the allegations in the Complaint.  Defendants do not address this analysis or explain why the claims accrued on October 8, 2016.  Second, even if the claims accrued on October 8, 2016, the Court previously held that the Complaint alleged sufficient facts to support equitable estoppel.  In addition to the facts that the Court found sufficient, the FAC additionally alleges that:  (1) Plaintiff Alyssa Cabrera requested a copy of Jackson's autopsy from the corner, but it was not received; (2) Plaintiff Matthew Boring spoke with an MPD police officer several months after the shooting, and the officer (who knew Boring was Jackson's son) said that all of the evidence had been reviewed and it had been concluded that the shooting was justified; and (3) the first time that Plaintiffs discovered the details of the officer involved shooting was November 2020 following documents that were filed in another federal case against the City.

*Discussion*

    1.     Federal Claims[1]

        a.     Accrual Date

In the Court's prior order, the Court held *inter alia* that the accrual date for the vicarious liability RA and ADA claims was October 8, 2016, but an accrual date could not be determined for the other survival claims against the City and Carroll.  See Estate of Jackson, 2021 U.S. Dist. LEXIS 199638 at *28-*29, *32, *34-*36.  Plaintiffs had indicated that their claims accrued in November 2020.  Given Plaintiffs' alternate accrual date, the Court explained:

> A survival claim involves a claim that existed and accrued before death.  See George, 736 F.3d at 833 n.6; Tatum, 441 F.3d at 1093 n.2; Smith, 818 F.2d at 1416; Runyan, 54 Cal.4th at 861-62; see also Cal. Code Civ. Proc. §§ 366.1, 377.20. If Plaintiffs' position is correct that November 2020 is the proper accrual date for many of the claims, then those claims accrued about four years after Jackson's death.  Those claims would not have belonged to Jackson, and her Estate could not pursue them.  See id.

Id. at *64.  The Court cautioned Plaintiffs that, "[i]n the amendment process, Plaintiffs need to be

---

[1] There are three federal survival claims in the FAC:  (1) Fourth Amendment excessive force against the City and Carroll; (2) direct liability under the ADA and the RA against the City; and (3) vicarious liability under the ADA and the RA against the City.

cognizant of when a claim truly accrued, and whether the claim can be properly pursued by the Estate." Id.  The issue is again brought to the fore by Defendants as they contend that all survival claims accrued on October 8, 2016.

Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action and the cause of that injury.  Gregg v. Department of Pub. Safety, 870 F.3d 883, 887 (9th Cir. 2017); Bonneau v. Centennial Sch. Dist. No. 28J, 666 F.3d 577, 581 (9th Cir. 2012).  There is nothing in the current briefing that would cause the Court to conclude that the ADA and RA vicarious liability claims accrued on a date other than October 8, 2016.  Similarly, as with the prior motion, the parties do not adequately explain for certain when the remaining survival claims accrued.  Therefore, the Court cannot hold as a matter of law that the remaining survival claims accrued on October 8, 2016.

### b.    Equitable Estoppel

Although the Court cannot hold as a matter of law that the other federal survival claims accrued on October 8, 2016, that date is the only date that could produce a viable survival claim. A survival claim involves a claim that existed and accrued before death.  See George, 736 F.3d at 833 n.6; Tatum, 441 F.3d at 1093 n.2; Smith, 818 F.2d at 1416; Runyan, 54 Cal.4th at 861-62; see also Cal. Code Civ. Proc. §§ 366.1, 377.20.  Given the allegations in the FAC, any injury suffered by Jackson occurred on October 8, 2016.  That is the date that she was shot, killed, battered, suffered a breach of the duty of care, suffered the consequences of an improper policy or improper supervision, and her disability was not reasonably accommodated.  October 8, 2016 is also the date of Jackson's death and thus, the last date that Jackson could have obtained any necessary knowledge or information for purposes of accrual.  Since October 8, 2016, is the last date a viable survival claim could have accrued, and this case was not filed until March 2021, equitable estoppel must apply.[2]

Equitable estoppel may be appropriate where the defendant's act or omission actually and reasonably induced the plaintiff to refrain from filing a timely suit.  Doe v. Marten, 49

---

[2] In the Court's prior order, the Court held that equitable tolling did not apply to this case.  See Estate of Jackson, 2021 U.S. Dist. LEXIS 199638 at *38-*39, *60 n.17.

Cal.App.5th 1022, 1028 (2020).  The act or omission must be one that constitutes a non-disclosure or misrepresentation of material fact, rather than law.  <u>Millview Cty Water Dist. v. State Water Resources Control Bd.</u>, 32 Cal.App.5th 585, 599 (2019).  Generally, a plaintiff must show four elements to apply the doctrine of equitable estoppel:  "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."  <u>J.M. v. Huntington Beach Union High Sch. Dist.</u>, 2 Cal.5th 648, 656 (2017); <u>Honeywell v. Workers' Comp. Appeals Bd.</u>, 35 Cal.4th 24, 37 (2005); <u>see</u> <u>Lukovsky</u>, 535 F.3d at 1051-52; <u>see also</u> <u>Estate of Amaro v. City of Oakland</u>, 653 F.3d 808, 813 (9th Cir. 2011).  When a governmental entity is the party to be estopped, there must also be a showing that affirmative acts or affirmative misrepresentations by the governmental entity were involved and application of estoppel must not effectively nullify a strong rule of policy that has been adopted for the benefit of the public.  <u>See</u> <u>J.M.</u>, 2 Cal.5th at 657 (discussing affirmative acts or misrepresentations); <u>Lentz v. McMahon</u>, 49 Cal.3d 393, 399-400 (1989) (discussing public policy concerns); <u>see also</u> <u>Estate of Amaro</u>, 653 F.3d at 813.  The rule of equitable estoppel includes the requirement that the plaintiff exercise reasonable diligence.  <u>Bernson v. Broning-Ferris Industries</u>, 7 Cal.4th 926, 936 (1994).  A plaintiff must plead with particularity the facts that give rise to equitable estoppel/fraudulent concealment.  <u>Guerrero v. Gates</u>, 442 F.3d 697, 707 (9th Cir. 2006).

<u>i.     The City</u>

In the Court's prior order, the Court found that the Complaint adequately alleged equitable estoppel for the RA and ADA vicarious liability claims against the City and that applicability of the doctrine to this case was a question of fact.  The Court found that Plaintiffs' knowledge of Jackson's mental health history/problems combined with the City's materially misleading October 2016 press release[3] were sufficient to support a plausible equitable estoppel theory.  Additionally,

---

[3] The Court held that the press release was misleading when compared to the allegations that described the bodycam footage of the shooting and because the press release identified every type of force used except for the breaching round and falsely stated that multiple bean bags were deployed.  <u>See</u> <u>Estate of Jackson</u>, 2021 U.S. Dist. LEXIS 199638 at *43.

1    Plaintiffs also would have had knowledge of Jackson's behavior on the night in question since

2    Jackson's father twice called the police and described her behavior.  The FAC contains the same

3    relevant allegations as the Complaint, but also adds that:  (1) one of the Plaintiffs requested a copy

4    of the autopsy report from the County Coroner, but the report was never produced, (2) a City

5    police officer informed another Plaintiff that Jackson's shooting was fully investigated and found

6    to be justified, and (3) it was not until November 2020 that the internal investigation was obtained

7    through an unrelated federal case, *Perkins v. City of Modesto*.  The FAC also continues to allege

8    that, in July 2018, the Stanislaus County District Attorney issued a press release that described the

9    events of October 8, 2016 and concluded that the officers' use of force was justified.[4]  The

10   attempts to obtain an autopsy report and speaking with a City police officer are additional

11   allegations that demonstrate some form of investigation was attempted, and the statements of the

12   City police officer is another instance in which Plaintiffs were informed that the officers' actions

13   were justified.  At this time, the allegations in the FAC do not change the Court's prior analysis.[5]

14   Moreover, the Court detects no reason why that analysis would not apply to all federal survival

15

---

16   [4] In the prior order, the Court noted that it would not consider this press release for purposes of misconduct.  However, the district attorney's press release can be considered in determining the reasonableness of Plaintiffs' diligence or

17   knowledge regarding the existence of a claim.  See Gomez v. City of Torrance, 311 F. App'x 967, 969 (9th Cir. 2009).

18   [5] Defendants argue in reply that Plaintiffs were not diligent *inter alia* because the death certificate identified the cause

19   of death as "blood loss due to shotgun wound to the back and gunshot wound to the chest."  Doc. No. 1-1 at 3.  The Court finds this argument to be significant.  Equitable estoppel applies only to the extent that a reasonably diligent

20   investigation would have revealed a claim.  See Bernson, 7 Cal.4th at 936.  Further, a "defendant's fraudulent concealment tolls the statute of limitations only when, as a result of that concealment, the plaintiff fails to discover

21   some critical fact."  Goldrich v. Natural Y Surgical Specialties, Inc., 25 Cal.App.4th 772, 783 (1994).  While technically a bean bag wound is a shotgun wound, a bean bag round is considered a less deadly force option than a

22   normal shotgun round. See Glenn, 673 F.3d at 871-72.  From a lay perspective, a "shotgun wound" sounds different than, and would not necessarily be associated with, a "bean bag wound."  Further, the location of the shotgun wound

23   is significant because the City's press release indicated that Jackson was coming towards the officers when they opened fire.  Thus, the death certificate's "cause of death" section can be read as inconsistent with the City's press

24   release, thereby triggering a duty to investigate.  That is, the death certificate seriously implicates Plaintiffs' knowledge and diligence with respect to equitable estoppel.  The FAC does not explain why the death certificate was

25   requested, whether (or why not) other attempts to obtain the certificate were made, when the death certificate was actually obtained, or how the cause of death on the death certificate could have been or was actually interpreted by the

26   Plaintiffs.  This information also would be relevant to the duty to investigate and Plaintiffs' diligence or lack thereof. Nevertheless, Defendants improperly raised the issue for the first time in a reply, thereby preventing a response from

27   Plaintiffs.  For purposes of this order only, the Court will again recognize that issues associated with equitable estoppel/fraudulent concealment are generally not appropriately resolved in a Rule 12(b)(6) motion.  In the absence of

28   a proper opportunity for Plaintiffs to address issues surrounding the death certificate, the Court will not dismiss the survival claims or make any findings on the death certificate's effect on the equitable estoppel theory at this time.

claims, not just the ADA and RA vicarious liability claims.[6]  Therefore, dismissal of the survival claims against the City based on the statute of limitations and inapplicability of equitable estoppel is inappropriate.

ii.    Carroll

The Court's prior order did not analyze the application of equitable estoppel to Carroll.  As explained above, the Court's prior order found a plausible equitable estoppel theory as applied to the City based on the Plaintiffs' knowledge of Jackson's personal/medical history, Jackson's behavior at her father's house just prior to the shooting, and the City's October 10, 2016 press release which was misleading and omitted key information.  See Estate of Jackson, 2021 U.S. Dist. LEXIS 199638 at *43.  Through the bodycam videos and the knowledge of the officers who were City employees acting within the course and scope of their duties as City police officers, the City would have known the relevant events of October 8, particularly Jackson being shot in the back with a pistol round and a shotgun breaching round as she was staggering without knives away from the officers.  Moreover, the press release was issued by, or expressly in the name of, the City.  None of these points can be said of Carroll.

There are no allegations that Carroll knew what had transpired during the shooting by the time of the October 10 press release, nor are there allegations that sufficiently link Carroll to the press release.[7]  Based on the FAC's allegations, for equitable estoppel to apply to Carroll, Carroll would have had to know the alleged true state of events as they transpired on October 8, 2016 and play a material role in the issuance of the City's press release as written.  Without knowledge of the actual events of October 8, 2016 as of the time of the press release, the first element of

---

[6] The Court notes that Defendants' reply points out that there are no allegations regarding an examination of Jackson's body, even though her body was available to Plaintiffs.  In the absence of authority to the contrary, the Court will not impose a requirement that family members must inspect the corpse of a relative in order to demonstrate diligence.  Such a blanket requirement to inspect would be unreasonable, insensitive, and unduly intrusive.  While some families may voluntarily choose to do so, and in some cases an inspection by relatives or at the request of relatives may arguably be necessary, the Court is aware of nothing that would require such an inspection in this case.

[7] In the prior order, the Court noted that the Complaint suggested that Carroll played a role in the press release.  Upon further review, the Court is not satisfied that the allegations in the operative FAC sufficiently link the content of the press release to Carroll.  The FAC alleges only that the City issued the press release.  See FAC at ¶ 65.  While the FAC does allege that Carroll failed to publicly reveal certain facts, see FAC ¶ 73, that is a broad allegation that fails to allege a duty to disclose by Carroll and is not specifically tied to the press release.  Therefore, the FAC does not sufficiently link the press release to Carroll.

1  equitable estoppel cannot apply to Carroll.  See J.M., 2 Cal.5th at 656.  Similarly, without a

2  material role in the issuance of the press release as written, there is no improper or wrongful

3  conduct by Carroll that could be relied upon by the Plaintiffs.  See id.  It is true that the FAC

4  alleges that Carroll failed to disclose facts and information to Plaintiffs, but the FAC fails to allege

5  any kind of duty that would have required Carroll to disclose any facts to Plaintiffs.  Without

6  allegations or citation to applicable authority that establishes that Carroll had some form of duty to

7  disclose, the FAC's allegations of silence or a failure to disclose are insufficient.  See Castaneda v.

8  Dep't of Corr. & Rehab., 212 Cal.App.4th 1051, 1066 (2013); Spray, Gould, & Bowers v.

9  Associated Int'l Ins. Co., 71 Cal.App.4th 1260, 1268-69 (1999); Scafidi v. Western Loan & Bldg.

10  Co., 72 Cal.App.2d 550, 562 (1946).  Because the FAC contains no allegations that would support

11  an equitable estoppel theory against Carroll, there are no plausible survival claims against him.

12  Therefore, dismissal of all federal survival claims against Carroll is appropriate.

13       2.       State Law Claims[8]

14       The Court previously held that the vicarious liability claims against the City for the actions

15  of Bettis, Lamantia, and Callahan and the wrongful death claim accrued on October 8, 2016.  See

16  Estate of Jackson, 2021 U.S. Dist. LEXIS 199638 at *58-*59.  The Court also held that the parties

17  had not adequately addressed accrual with respect to the state claims against Carroll and the City's

18  vicarious liability for Carroll's actions.  See id. at *59-*60.  The Court then held that the same

19  equitable estoppel analysis that applied to the federal claims applied to the state law claims.  See

20  id. at *60-*61.  The Court dismissed the state law claims against Bettis, Callahan, and Lamantia,

21  but did not dismiss the claims against Carroll and the City.  See id.

22       The Court will generally follow its prior analysis for purposes of this motion.  As

23  explained above, the Court finds that the FAC adequately alleges equitable estoppel for the

24  vicarious liability and wrongful death claims against the City based on the conduct of Carroll and

25  the officers.

26       However, as discussed above, with respect to Carroll and the survival claims, the only

27

28  [8] There are four state law survival claims:  (1) Cal. Const. Art. I, § 13; (2) the Bane Act; (3) battery; and (4) negligence.

accrual date that could yield a plausible claim is October 8, 2016, because nothing else could happen to Jackson and she could obtain no further information about Carroll's relationship to the survival claims after her death on that date.  Utilizing an October 8, 2016 accrual date for all state law survival claims against Carroll, as explained above, the FAC fails to adequately show that Carroll engaged in wrongful conduct or had the requisite knowledge at the appropriate time to support an equitable estoppel theory.  Therefore, no equitable estoppel theory is adequately alleged for the state law survival claims against Carroll, and those claims appear time barred.

**II.**     **First & Fourteenth Amendment Interference with Familial Relationship**

*Defendants' Arguments*

Defendants argue that the two familial relationship claims fail for several reasons.  First, the original complaint alleged these claims against only Officers Bettis, Callahan, and Lamantia.  When the Court dismissed these claims and granted leave to amend, it was to allege facts with respect to these three officers.  The Court did not grant leave to substitute the City and Carroll as Defendants.  Because the FAC alleges the two familial relationship claims against the City and Carroll, Plaintiffs exceeded the scope of permissible amendments, which makes dismissal appropriate.  Second, substitution of the City and Carroll as defendants is futile because the claims were filed in excess of the statute of limitations and equitable estoppel does not apply.  Third, the First Amendment claim should be dismissed because it is purely duplicative of the Fourteenth Amendment claim.  Fourth, the familial association claims fail to identify a deliberately indifferent City policy or custom that resulted in Jackson's death, fails to allege that an official with final policy making authority committed a constitutional wrong, and fails to include sufficient factual allegations that show ratification by Carroll.  Fifth, and finally, the claims against Carroll are conclusory and allege only that the officers were inadequately trained or maintained improper policies or customs that resulted in harm to Plaintiffs.  The FAC does not allege what the officers should have been trained to do.

*Plaintiffs' Opposition*

Plaintiffs argue that dismissal is not appropriate under any of the theories advanced by

1   Defendants.  First, no scheduling order precluded amendment under Rule 15(a)(1), so amendment

2   as a matter of course was appropriate.  Further, substituting Carroll and the City is more efficient

3   than filing a new lawsuit, which would be related to this case.  Second, the Court has already

4   concluded that it could not determine an accrual date for the claims against the City and Carroll.

5   Because an accrual date cannot be determined, it is inappropriate to dismiss these claims due to

6   expiration of the basis of the statute of limitations.  Alternatively, equitable estoppel applies to

7   these claims as it applies to the survival claims.  Third, the Court previously found the allegations

8   against Carroll were sufficient to show a policy of permitting or encouraging the use of excessive

9   force, as reflected by contacts with mentally ill persons, numerous identified use of force

10  incidents, and the ratification of Jackson's shooting.  This analysis overlaps with respect to the

11  City's *Monell* claims.  Moreover, the Court found acquiescence by Carroll, which supports

12  ratification and the existence of a policy for purposes of liability against the City.  Finally, courts

13  have declined to dismiss First Amendment familial relationship claims as duplicative of

14  Fourteenth Amendment familial relationship claims.

15       *Discussion*

16       There are numerous issues raised with the respect to the First and Fourteenth Amendment

17  claims.  The Court will address the issues separately.

18       1.       Procedural Propriety of Amendments

19       Generally, an amendment that exceeds the scope of amendments permitted by a dismissal

20  order is improper.  See Dr. Seuss Enters., L.P. v. ComicMix LLC, 300 F.Supp.3d 1073, 1083 n.7

21  (S.D. Cal. 2017); Coppola v. Smith, 19 F.Supp.3d 960, 970-71 (E.D. Cal. 2014).  However, in

22  light of the liberal policy favoring amendments to pleadings and resolution of claims on the

23  merits, "unless an order clearly limits the scope of the amendments it permits, or unless the

24  opposing party would be unfairly prejudiced by a new or expanded claim, district courts have been

25  loath to strike or dismiss those claims."  Robinson v. Clear Recon Corp., 2022 U.S. Dist. LEXIS

26  104094, *10 (E.D. Cal. June 9, 2022).

27       Here, when the Court dismissed the First and Fourteenth Amendment claims in the original

28  Complaint, those claims had only been brought against the three officers, the claims had not been

14

1   alleged against either the City or Carroll.  While the dismissal order addressed why the First and

2   Fourteenth Amendment claims were subject to dismissal, the dismissal order itself did not

3   expressly limit the First and Fourteenth Amendment claims.  Rather, the dismissal order dismissed

4   all claims against the three officers in general.  See Estate of Jackson, 2021 U.S. Dist. LEXIS

5   199638 at *65-*66.  Thus, the Court's order addressed the claims as they existed at that time.  The

6   Court did not expressly prevent Plaintiffs from adding First and Fourteenth Amendment claims

7   against the City and Carroll, and the context and history of the dismissal order does not

8   sufficiently indicate that adding claims against Carroll and the City would be prohibited.

9   Moreover, given that the Court declined to dismiss other claims against the City and Carroll, and

10  given the early procedural history of this case, there is no clear prejudice to the City or Carroll by

11  permitting the First and Fourteenth Amendment claims to be pursued against them.  Therefore, the

12  Court will not dismiss these claims for violating the scope of permitted amendment.  See

13  Robinson, 2022 U.S. Dist. LEXIS 104094 at *10.

14          2.      Statute of Limitations

15          Unlike the survival claims, October 8, 2016 is not the latest date that a viable familial

16  relationship claim could accrue.  Rather, October 8, 2016 is the earliest date that a familial

17  relationship could have accrued.  This is because a constitutional familial relationship claim

18  belongs to the surviving parents, spouse, and children of a decedent and vindicates those family

19  members' own individual rights.  Each Plaintiff could obtain new information after Jackson's

20  death on October 8, 2016.

21          In the Court's prior order, the Court held that it could not determine when the *Monell*

22  claims against the City and the supervisory claims against Carroll accrued.  See Estate of Jackson,

23  2021 U.S. Dist. LEXIS 199638 at *34-*36.  The Court so held because there was insufficient

24  allegations and argument regarding what Jackson knew or reasonably suspected on October 8,

25  2016.  See id.  The same is true here.  There is insufficient arguments or allegations about when

26  the Plaintiffs knew or suspected that the City's allegedly deliberately indifferent policies,

27  practices, or customs and Carroll's improper supervision or acquiescence caused them to be

28  deprived of Jackson's companionship.  Because the Court cannot determine when the First and

1  Fourteenth Amendment claims accrued, the Court cannot determine when the statute of limitations

2  ran or dismiss these claims due to the expiration of the statute of limitations.  See United States ex

3  rel. Air Control Techs. v. Pre Con Indus., 720 F.3d 1174, 1178 (9th Cir. 2013); Von Saher v.

4  Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010).

5        3.      Redundancy

6        The Ninth Circuit has found valid claims for interference with familial relationships under

7  both the Fourteenth Amendment and the First Amendment in the same case.  See Lee v. City of

8  L.A., 250 F.3d 668, 685 (9th Cir. 2001).  In light of Lee, the Court will not dismiss the First

9  Amendment claim as redundant or duplicative of the Fourteenth Amendment claim at this time.

10  See Estate of Osuna v. County of Stanislaus, 392 F.Supp.3d 1162, 1178 (E.D. Cal. 2019).

11        4.      Pleading Sufficiency

12             a.      Carroll

13        In the Court's prior order, the Court held that the allegations against Carroll were sufficient

14  for supervisory liability regarding the Fourth Amendment claim.  Specifically, the Court held that

15  the allegations were sufficient to show acquiescence, inadequate training because there was no

16  training provided with respect to contacts with impaired individuals, and numerous cases were

17  cited in support of the assertion that there was inadequate supervision.  See Estate of Jackson,

18  2021 U.S. Dist. LEXIS 199638 at *49-*50.  As alleged, the familial relationship claims in this

19  case are integrally predicated on and entwined with the Fourth Amendment claim.  See Gausvik v.

20  Perez, 392 F.3d 1006, 1008 (9th Cir. 2004); Schaefer v. Goch, 153 F.3d 793, 799 (7th Cir. 1998);

21  Burke v. Ditomas, 2021 U.S. Dist. LEXIS 165241, *10 (E.D. Cal. Aug. 31, 2021); J.P. v. City of

22  Porterville, 801 F. Supp. 2d 965, 988-89 (E.D. Cal. 2011); see also Schwarz v. Lassen Cty. Jail,

23  628 F. App'x 527, 528 (9th Cir. 2016); Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365,

24  371 n.4 (9th Cir. 1998).  Given the relationship between the familial relationship and Fourth

25  Amendment claims, the Court is aware of no reason why its previous holding on the Fourth

26  Amendment claim should not apply to the allegations supporting the familial relationship claims

27  against Carroll.  Therefore, the Court finds that the FAC adequately alleges supervisory liability

28  against Carroll.

1                  <u>b.</u>      The City

2             The Court's prior order did not address the pleading sufficiency of the *Monell* claims

3 against the City.  Nevertheless, as indicated by Plaintiffs, the supervisory claims against Carroll

4 are essentially the same as the *Monell* claims against the City.  Liability is premised on ratification

5 by Carrol (who, as the City police chief, can reasonably be inferred to be an official with final

6 policy making authority), failure to train officers regarding contacts with individuals who have

7 mental or drug impairments, and a policy of tolerating excessive force.  Because the allegations

8 against Carroll are sufficient, so are the *Monell* claims against the City.[9]  <u>See</u> <u>Nehad v. Browder</u>,

9 929 F.3d 1125, 1141-42 (9th Cir. 2019) (discussing supervisory and *Monell* liability together and

10 finding same evidence could support liability for both theories); <u>Flores v. County of L.A.</u>, 758

11 F.3d 1154, 1158-59 (9th Cir. 2014) (noting that same standard applied to the supervisory and

12 *Monell* theories alleged); <u>Larez v. L.A.</u>, 946 F.2d 630, 646-48 (9th Cir. 1991)  (discussing

13 individual and official capacity liability).  Therefore, dismissal is inappropriate.

14

15 **III.**    **ADA & RA Claims**

16       *Defendant's Arguments*

17             The City argues the FAC alleges exigent circumstances that negated any need to comply

18 with the ADA or the RA.  Specifically, Jackson advanced with knives in her hand to within 11 or

19 12 feet of Officer Lamantia.  Because Jackson created the exigency, there are no viable claims.

20       *Plaintiffs' Opposition*

21             Plaintiffs argue *inter alia* that the same fact questions that govern a Fourth Amendment

22 excessive force claim inform an accommodation analysis.  Plaintiffs explain that their theory of

23 liability under the ADA and the RA is not limited to or based on the first gunshot by Lamantia and

24 the taser use by Callahan.  Rather, liability is based on the officers' pre-shooting conduct (which

25 demonstrates poor judgment, lack of preparedness, and undue haste) and the conduct after Jackson

26

27 [9] The FAC identifies a number of additional cases where excessive force was allegedly used.  In the absence of a
particular challenge to the cases listed in the FAC, the Court expresses no opinion regarding the relevance or

28 admissibility of these cases.  Instead, the Court notes that the FAC identifies a number of instances that allegedly
support a policy of tolerating excessive force.

dropped the knives and was staggering away without posing a threat.  Defendants' arguments improperly limit the scope of the claim and views specific aspects of the encounter.

*Legal Standard*

The ADA and RA are analyzed together.  See Vos v. City of Newport Beach, 892 F.3d 1024, 1036 (9th Cir. 2018); City of  L.A. v. AECOM Servs., 854 F.3d 1149, 1160 (9th Cir. 2017); Douglas v. California Dept. of Youth Auth., 285 F.3d 1226, 1229 n.3 (9th Cir. 2002).  The ADA and RA apply to arrests.  See Sheehan v. City & Cty of San Francisco, 743 F.3d 1211, 1232 (9th Cir. 2014).[10]  Generally, the same considerations that govern a plaintiff's Fourth Amendment claim will also govern the reasonableness of an ADA/RA accommodation analysis.  See Vos, 892 F.3d at 1037.  Further, exigent circumstances will inform the reasonableness of any accommodation requested or identified.  See Sheehan, 743 F.3d at 1231-32; Harper v. County of Merced, 2018 U.S. Dist. LEXIS 191567, *19 (E.D. Cal. Nov. 7, 2018).

*Discussion*

As the Court reads the FAC and Plaintiffs' opposition, Plaintiffs' ADA and RA claims essentially mirror the Fourth Amendment claim.  So reading the ADA and RA claims, the Court does not find that dismissal is appropriate.  The FAC's allegations do not indicate that exigent circumstances existed with respect to Bettis's use of the shotgun and Lamantia's second pistol shot.  Rather, the FAC alleges that Jackson had dropped the knives and was staggering away from the officers when these force mediums were used.  Further, as with the Fourth Amendment, the events leading up Lamantia's second pistol shot and Bettis's shotgun shots (including Callahan's use of the taser, Lamantia's first pistol shot, Jackson's conduct, and the officer's tactics) may be considered under the totality of the circumstances leading to the second pistol shot and use of the shotgun.[11]  See Vos, 892 F.3d at 1034.  Therefore, dismissal is inappropriate.

---

[10] Reversed in part on other grounds, 575 U.S. 600 (2015).

[11] Under the Fourth Amendment, the events leading up to a use of force, including the officer's tactics, poor judgment, or lack of preparedness, are encompassed in the totality of the circumstances in evaluating a Fourth Amendment excessive force claim.  See Nehad, 929 F.3d at 1135; Vos, 892 F.3d at 1034.  However, a Fourth Amendment violation for excessive force cannot be established "based on merely bad tactics that result in a deadly confrontation that could have been avoided."  Vos, 892 F.3d at 1034 (quoting Billington v. Smith, 292 F.3d 1177, 1190 (9th Cir. 2002), overruled on other grounds County of L.A. v. Mendez, 137 S.Ct. 1539 (2017)); see City & Cty of San Francisco v. Sheehan, 575 U.S. 600, 615 (2015); Knox v. City of Fresno, 708 F. App'x 321, 323 (9th Cir. 2017).

1    **IV.**    **State Tort Claims**

2         *Defendants' Arguments*

3         Defendants argue that all state law claims are barred because they cannot plead timely

4    compliance with the California Government Claims Act.  Although the shooting occurred in

5    October 2016, no claim was presented to the City until January 2021.  The City returned the claim

6    because it was not presented within the time permitted by law, and informed the Plaintiffs that

7    their only recourse was to seek leave to present a late claim.  The FAC does not allege that

8    Plaintiffs sought leave to present a late claim and thus, fails to adequately plead compliance with

9    the Claims Act.  Without compliance with the Claims Act, there can be no viable state law claims

10   in this case.

11        *Plaintiffs' Opposition*

12        Plaintiffs argue that Defendants' accrual analysis fails to distinguish between the vicarious

13   claims against the City and the direct liability claims against Carroll.  While the Court previously

14   determined that the vicarious liability claims based on the three officers' conduct accrued on

15   October 8, 2016, the Court held that there was inadequate argument regarding what Jackson knew

16   or suspected regarding Carroll and thus, an accrual date was not determined.  The Court's prior

17   analysis should continue to apply regarding the direct liability claims against Carroll and the

18   vicarious liability claims against the City based on Carroll's conduct.  However, even if the Court

19   accepts that all claims accrued in October 2016, equitable estoppel still applies.  Equitable

20   estoppel is a defense to both the running of the statute of limitations and as a defense to an

21   untimely filed Government Claims Act claim.

22        *Legal Standard*

23        As a prerequisite for filing suit for "money or damages" against a public entity, the

24   California Government Claim Act requires presentation of a claim to the public entity.  See Cal.

25   Gov. Code § 945.4; State of California v. Superior Ct., 32 Cal.4th 1234, 1240-44 (2004)

26   ("Bodde").  Lawsuits that seek monetary relief based on claims sounding in tort, as well as claims

27   sounding in contract, are lawsuits for "money or damages."  See City of Stockton v. Superior

28   Court, 42 Cal.4th 730, 738 (2007); Sparks v. Kern County Bd. of Supervisors, 173 Cal.App.4th

1   794, 798 (2009); <u>Baines Pickwick, Ltd. v. City of Los Angeles</u>, 72 Cal.App.4th 298, 307 (1999).

2   Claims relating to a cause of action for death or injuries to the person or injuries to personal

3   property must be presented no later than six months after the accrual of the cause of action.  <u>See</u>

4   Cal. Gov. Code § 911.2(a).  The term "injury" means "death, injury to a person, damage to or loss

5   of property, or any other injury that a person may suffer to his person, reputation, character,

6   feelings, or estate, of such nature that it would be actionable if inflicted by a private person." Cal.

7   Gov. Code § 810.8; <u>Holt v. Kelly</u>, 20 Cal.3d 560, 564 n.4 (1978); <u>Ovando v. County of Los</u>

8   <u>Angeles</u>, 159 Cal.App.4th 42, 63 n.7 (2008).  Claims relating to "any other cause of action" must

9   be presented no later than one year after the accrual of the cause of action.  <u>See</u> Cal. Gov. Code §

10  911.2(a).  "Accrual of the cause of action for purposes of the government claims statute is the date

11  of accrual that would pertain under the statute of limitations applicable to a dispute between

12  private litigants."  <u>Shirk v. Vista Unified Sch. Dist.</u>, 42 Cal.4th 201, 208-09 (2007); <u>K.J. v.</u>

13  <u>Arcadia Unified Sch. Dist.</u>, 172 Cal.App.4th 1229, 1234 (2009).  The claims presentation

14  requirements also apply to claims against public employees for injuries resulting from his scope of

15  employment as a public employee.  <u>See</u> Cal. Gov. Code 950.2; <u>Williams v. Hovarth</u>, 16 Cal.3d

16  834, 838 (1976); <u>Olson v. Manhattan Beach Unified Sch. Dist.</u>, 17 Cal.App.5t h 1052, 1055 n.1

17  (2017); <u>Massa v. Southern Cal. Rapid Transit Dist.</u>, 43 Cal.App.4th 1217, 1222-23 (1996); <u>Fowler</u>

18  <u>v. Howell</u>, 42 Cal.App.4th 1746, 1750-51 (1996).  "Timely claim presentation is not merely a

19  procedural requirement, but is . . . a condition precedent to a plaintiff maintaining an action against

20  [a public entity], and thus [is] an element of the plaintiff's cause of action." <u>Shirk</u>, 42 Cal.4th at

21  209; <u>see</u> <u>DiCampli-Mintz v. County of Santa Clara</u>, 55 Cal.4th 983, 991 (2012); <u>Bodde</u>, 32 Cal.4th

22  at 1240.  Accordingly, the failure to timely present a claim for money or damages to a public

23  entity bars the plaintiff from bringing suit against that entity or its employee.  <u>City of Stockton</u>, 42

24  Cal.4th at 738; <u>Bodde</u>, 32 Cal.4th at 1239; <u>Sparks</u>, 173 Cal.App.4th at 798; <u>Fowler</u>, 42

25  Cal.App.4th at 1753.  However, equitable estoppel can apply to prevent a municipality from

26  asserting a failure to timely comply with the Government Claims Act.  <u>See</u> <u>City of Stockton</u>, 42

27  Cal.4th at 744.

28

1    *Discussion*

2         As explained above, the Court finds that the FAC adequately alleges equitable estoppel for

3    the vicarious liability and wrongful death claims against the City based on the actions of Carroll

4    and the officers.  The equitable estoppel theory applies to both the statute of limitations and to

5    untimely compliance with the Government Claims Act.  See City of Stockton, 42 Cal.4th at 744.

6         However, as discussed above, with respect to Carroll and the survival claims, the only

7    accrual date that could yield a plausible claim is October 8, 2016.  Further, wrongful death claims

8    accrue upon the death of a family member.  See Horwich v. Superior Ct., 21 Cal.4th 272, 283

9    (1999).  With an October 8, 2016 accrual date for all state law claims against Carroll, the FAC

10   does not show that Carroll engaged in wrongful conduct or had the requisite knowledge for

11   purposes of equitable estoppel.  Equitable estoppel is not plausibly alleged.  Also, there is no

12   dispute that Plaintiffs filed their government claim in January 2021.  Without equitable estoppel,

13   there is a failure to timely comply with the Government Claims Act.

14        In sum, dismissal of the state law claims against the City is inappropriate because of the

15   potential application of equitable estoppel, but dismissal of the state law claims against Carroll for

16   failure to timely comply with the Government Claims Act is appropriate.

17

18   **V.    Additional Pleading Matters**[12]

19        **1.    Bane Act**

20        The elements of a Bane Act claim include the defendant's interference with a plaintiff's

21   rights through threats, intimidation, or coercion and that the defendant had the specific intent to

22   violate the plaintiff's rights.  See Reese v. County of Sacramento, 888 F.3d 1030, 1043 (9th Cir.

23   2018)); Cornell v. City & Cty of San Francisco, 17 Cal.App.5th 766, 799-802 (2017); Judicial

24   Council of Cal. Civil Jury Instructions (CACI) § 3066.   Here, there are no allegations that

25   plausibly suggest that Carroll or any other officer intended to violate Jackson's constitutional

26   rights, nor are there sufficient allegations that show Carroll violated any of Jackson's rights

27   _____

28   [12] The Court may raise pleading inadequacies *sua sponte*.  See Wong v. Bell, 642 F.2d 359, 361 (9th Cir. 1981).

1  through threats, intimidation, or coercion.  Thus, there is no plausibly pled Bane Act claim

2  involving an individual defendant.  Further, if no individual officer violated the Bane Act, there is

3  no vicarious liability for the City.  See Cal. Gov. Code § 815.2(a).

4  **2.**    **Public Supervisor's State Law Laibility**

5  In order for a public employee administrator/supervisor to be liable for negligent or

6  improper hiring, training, or supervision, and in order for the government employer to be

7  vicariously liable through Gov't Code § 815.2 for that supervisor's negligent or improper hiring,

8  training, or supervision, there must be a special relationship with the plaintiff.  See Dyer v. City of

9  Auburn, 2022 U.S. Dist. LEXIS 110618, *21-*22 (E.D. Cal. June 21, 2022); Rodriguez v. County

10  of L.A., 2021 U.S. Dist. LEXIS 214894, *15 (C.D. Cal. Oct. 22, 2021); Estate of Wilson v.

11  County of San Diego, 2020 U.S. Dist. LEXIS 121662, *20-*22 (S.D. Cal. July 10, 2020); Bauer v.

12  City of Pleasanton, 2020 U.S. Dist. LEXIS 52748, *18-*19 (N.D. Cal. Mar. 26, 2020); Estate of

13  Osuna, 392 F.Supp.3d at 1182-83; C.A. v. William S. Hart Union High School Dist., 53 Cal.4th

14  861, 877 (2012).  Here, the FAC does not identify a special relationship between Carroll and

15  Jackson or any of the Plaintiffs.  This is important because all of the state law claims against

16  Carroll appear to be based on his alleged failure to implement appropriate policies and procedures,

17  which is tantamount to negligent or improper training and supervision.  Without allegations that

18  meet the requirements of *Williams S. Hart*, neither Carroll nor the City can be liable for inadequate

19  training and supervision.  See id.  Thus, the FAC does not plausibly allege any state law claims

20  based on improper training or supervision by Carroll.

21  **3.**    **Actions of Callahan**

22  There are no claims against Callahan individually in the FAC.  However, Callahan's

23  conduct is at issue for purposes of municipal and supervisory liability.  Under the Fourth

24  Amendment claim, the FAC alleges that Callahan failed to intercede, was an integral participant

25  in, or aided and abetted the use of excessive force.  See FAC ¶ 102.  Lamantia and Bettis are

26  alleged to have used excessive force, see id. at ¶ 101, which the Court reads as referring to

27  Lamantia's second pistol shot and all of Bettis's shotgun shots.  The FAC also clarifies that

28  Callahan informed Bettis and Lamantia that he intended to take Jackson into custody through a

§ 5150 mental health hold.  The FAC's allegations do not demonstrate a constitutional violation by Callahan.

First, to the extent that it may be an issue, the FAC's allegations demonstrate that that the decision to detain Jackson under § 5150 was reasonable.  Glenn had informed the officers about Jackson's current condition, Callahan had prior interactions with Jackson, and Jackson was screaming, agitated, and armed with multiple knives when Callahan, Bettis, and Lamantia confronted her.  See S.B. v. County of San Diego, 864 F.3d 1010, 1011 n.1 (9th Cir. 2017) (discussing § 5150); Bias v. Moynihan, 508 F.3d 1212, 1222 (9th Cir. 2007) (same).

Second, law enforcement officers have a duty to intercede or intervene when fellow officers violate the constitutional rights of a suspect or other citizen.  Tobias v. Arteaga, 996 F.3d 571, 583 (9th Cir. 2021); Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).  However, "officers can be held liable for failing to intercede only if they had an opportunity to intercede." Tobias, 996 F.3d at 584; Cunningham, 229 F.3d at 1289.  The FAC does not plausibly indicate that Callahan had a reasonable opportunity to intervene.  Callahan fired his taser about the same time that Lamantia fired his pistol for the first time.  Jackson dropped the knives and then began to stagger away.  Lamantia and Bettis then fired.  In that sequence, there is nothing to suggest that Callahan either knew that Lamantia and Bettis were going to fire or was in any kind of position to prevent Lamantia and Bettis from firing.  Rather, Lamantia and Bettis just fired again.  Under those circumstances, there is no breach of the duty to intervene.

Third, a law enforcement officer may be liable for another's constitutional violation if the officer has some fundamental involvement in the conduct that caused the constitutional violation. See Nicholson v. City of L.A., 935 F.3d 685, 691-92 (9th Cir. 2019); Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.12 (9th Cir. 2007).  Here, no fundamental participation by Callahan in excessive force is apparent.  Callahan did not used any lethal force or the bean bag shotgun, nor are there allegations that connect Callahan to Lamantia and Bettis's use of deadly force.  For example, there are no allegations that he ordered or verbally encouraged Lamantia and Bettis to shoot.  Because the reasonable decision to detain Jackson under § 5150 had been made, all officers would have proceeded with the understanding that some amount of force could be needed to

accomplish the detention.  E.g. Drummond v. City of Anaheim, 343 F.3d 1052, 1059 (9th Cir.

2003).  However, knowing that some amount of force may be necessary and proceeding to attempt

a detention are not the same as knowing that excessive force will be used.  Thus, the FAC fails to

adequately allege that Callahan was an integral participant in Lamantia and Bettis's excessive

force.

Finally, it is unclear what Plaintiffs mean by "aiding and abetting."  Cf. Wilson v. Town of

Mendon, 294 F.3d 1, 15 (1st Cir. 2002) (discussing "aiding and abetting" liability and appearing to

equate such liability with a failure to intervene).  However, as discussed above, the decision to

detain Jackson under § 5150 was reasonable and appropriate, the FAC does not show that

Callahan integrally participated in excessive force, or failed to intervene despite a reasonable

opportunity to do so in Lamantia and Bettis's excessive force.  Assuming without deciding that

"aiding and abetting" liability is something that is different from a failure to intervene, and is a

theory that would be recognized by the Ninth Circuit, there is nothing to suggest that Callahan did

anything that would constitute "aiding and abetting" in Lamantia's second pistol shot and Bettis

use of the shotgun.

In sum, the FAC does not adequately allege that Callahan engaged in any unconstitutional

behavior towards Jackson.  Thus, neither the City, see Simmons v. County of Navajo, 609 F.3d

1011, 1021 (9th Cir. 2010), nor Carroll, see Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th

Cir. 1998), can be liable for any conduct associated with Callahan.

## CONCLUSION

With respect to the survival claims and issues surrounding the statute of limitations,

equitable estoppel, and the Government Claims Act, the Court concludes that the FAC sufficiently

alleges equitable estoppel with respect to the claims against the City.  However, the FAC does not

adequately allege improper conduct or the requisite knowledge for equitable estoppel to apply to

Carroll.  Therefore, the survival claims against the City will not be dismissed, but the survival

claims against Carroll will dismissed, for problems relating to limitations periods.

With respect to the Bane Act claim, the FAC does not adequately allege either intent or conduct that amounts to intimidation, threats, or coercion as to Carroll and fails to allege that any MPD officer acted against Jackson with the intent to deprive her of any rights.

With respect to any federal claims based on the conduct of Callahan, the FAC fails to adequately allege that Callahan violated or could be liable for any violation of Jackson's federal rights.

Finally, with respect to the state law claims against Carroll and the City's vicarious liability for Carroll's conduct, these claims are based on negligent or improper training and supervision.  However, the FAC fails to identify a special relationship that existed between Carroll and Jackson or any Plaintiff.  Therefore, the FAC contains no plausible claims based on Carroll's allegedly improper training and supervision.  Further, the FAC fails to adequately allege equitable estoppel with respect to the wrongful death claim against Carroll.

At this time, it is not clear that any of the above deficiencies cannot be cured through amendment.  Therefore, dismissal will be with leave to amend.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.   Defendants' motion to dismiss (Doc. No. 29) is GRANTED as follows:

   a.   all claims against Defendant Chief Galen Carroll, except for the 42 U.S.C. § 1983 familial relationship claims, are DISMISSED;

   b.   all federal claims based on Officer Callahan conduct are DISMISSED;

   c.   all state law vicarious liability claims against the City based on Carroll's allegedly negligent or improper training and supervision are DISMISSED;

2.   Defendants' motion to dismiss is otherwise DENIED;

3.   Within twenty-eight (28) days of service of this order, Plaintiffs may file an amended complaint;

4.   If Plaintiffs fail to timely file an amended complaint, then leave to amend is deemed

automatically withdrawn and Defendants shall file an answer within thirty-five (35) days of service of this order.

IT IS SO ORDERED.

Dated:   August 3, 2022

_____

SENIOR  DISTRICT  JUDGE